In re AMERICAN COMMUNITY SERVICES, INC., Debtor.

AMERICAN COMMUNITY SERVICES, INC., and Commonwealth Financial Corporation, Plaintiffs,

v.

WRIGHT MARKETING, INC., Defendant.

Bankruptcy No. 86C–01947.
Adv. No. 86PC–0996.
Misc. No. 88–M–55W.

United States District Court,
D. Utah, C.D.

April 29, 1988.

M. Catherine Caldwell, Danny C. Kelly, Salt Lake City, Utah, for plaintiff Commonwealth Financial Corp.

William Thomas Thurman, Joel T. Marker, Salt Lake City, Utah, for plaintiff American Community Services, Inc.

Gainer M. Waldbillig, Salt Lake City, Utah, Steven P. Carponelli, Chicago, Ill., for defendant Wright Marketing, Inc.

## MEMORANDUM DECISION AND ORDER

WINDER, District Judge.

This matter is before the court on its own motion to withdraw the reference of an adversary proceeding in the bankruptcy case of American Community Services, Inc. The plaintiffs in the adversary proceeding are American Community Services, Inc. ("ACSI") and Commonwealth Financial Corporation ("Commonwealth"). ACSI is represented by William Taft Thurman, William Thomas Thurman and Joel T. Marker. Commonwealth is represented by M. Catherine Caldwell and Danny C. Kelly. Wright Marketing, Inc. ("Wright") is the

defendant in this action and is represented by Gainer M. Waldbillig and Stephen P. Carponelli.

Plaintiff ACSI filed a motion to withdraw the reference pertaining to Adversary Proceeding No. 86PC–0996 and filed a memorandum in support of its motion on January 28, 1988. On March 10, 1988, Commonwealth joined in that motion. The defendant did not file a memorandum in opposition to the plaintiffs' motion, and no party requested oral argument on the motion.

The court has carefully reviewed the files relating to the adversary proceeding and the plaintiffs' motion and memorandum filed therewith. Although the court concludes that the plaintiffs' motion to withdraw the reference is untimely under Local Rule B–106(2) of the District Court Rules of Bankruptcy Practice and Procedure, section 157(d) of title 28 permits a district court to withdraw an adversary proceeding from the bankruptcy court on its own motion if cause for withdrawal is shown. On its own motion, this court withdraws the reference regarding this adversary proceeding from the bankruptcy court in accordance with this memorandum decision and order.

### Background

On April 20, 1986, ACSI and Wright entered into an Asset Acquisition Agreement (the "Agreement") wherein Wright agreed to purchase certain assets owned by ACSI, including contracts with various social services agencies in Illinois and Missouri. Commonwealth is a secured creditor of ACSI and holds a security interest in the contract obligation owing from Wright to ACSI.

On May 7, 1986, ACSI filed for relief under Chapter 11 of the Bankruptcy Code and is currently acting as a debtor in possession. On November 25, 1986, plaintiffs ACSI and Commonwealth jointly filed a complaint against Wright and commenced the adversary proceeding which is the sub-ject of the present motion. The complaint concerns a breach of contract dispute and seeks recovery of damages in the amount of payments due and owing under the Asset Acquisition Agreement.

On January 28, 1987, Wright filed its answer and made a timely jury demand. Thereafter, the parties commenced discovery. On November 19, 1987, Wright made a motion requesting the bankruptcy court to determine that the proceeding was a non-core proceeding. At a hearing held on December 11, 1987, the bankruptcy court determined that the adversary proceeding was a non-core proceeding pursuant to 28 U.S.C. § 157(b)(3). Subsequent to this determination, the ACSI filed a motion to withdraw the reference of the proceeding on January 28, 1988. Commonwealth joined in ACSI's motion on March 10, 1988. To this date, Wright has not consented to a final determination and entry of final judgment by the bankruptcy court.

### Discussion

Congress redefined the jurisdictional scheme of the federal bankruptcy system in the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("the 1984 Amendments") in response to the Supreme Court's plurality opinion in *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).[1] In *Marathon,* the Supreme Court held that the broad jurisdictional grant given the bankruptcy judges under 28 U.S.C. § 1471 of the 1978 Bankruptcy Reform Act was in violation of Article III of the Constitution. Noting that the bankruptcy judges could exercise all the ordinary powers of the district courts, including the power to preside over jury trials, under 28 U.S.C. § 1471, Justice Brennan concluded that bankruptcy courts had been impermissively granted "the essential attributes of the judicial power" constitutionally belonging to only Article III courts. *Marathon,* 458 U.S. at 87, 102 S.Ct. at 2880. Central to the *Marathon* decision is

---

1. Although the Supreme Court has since narrowed its interpretation of the *Marathon* holding in subsequent decisions, Congress created the new jurisdictional scheme of the 1984 Amendments from the plurality opinion in *Marathon.* To interpret the 1984 Amendments a court must necessarily refer to the *Marathon* decision.

the Court's view that non-Article III bankruptcy judges do not have the authority to enter final decisions in matters outside the core of federal bankruptcy power.

The 1984 Amendments provide that the bankruptcy court functions as a non-Article III unit of the district court. 28 U.S.C. § 151. The district court is vested with original and exclusive jurisdiction over all bankruptcy cases and original and concurrent jurisdiction over all civil proceedings arising under the Bankruptcy Code. 28 U.S.C. § 1334(a)–(b). Nevertheless, the district court may refer bankruptcy cases or proceedings to the bankruptcy court in the district. 28 U.S.C. § 157(a). In the district of Utah, the district court has issued a General Order of Reference, dated July 10, 1984, which refers all bankruptcy cases and proceedings to the bankruptcy court. *See* Rule B–105 of the District Court Rules of Bankruptcy Practice and Procedure.[2]

The 1984 Amendments divided bankruptcy court jurisdiction over civil proceedings along the lines suggested by the *Marathon* decision. *Marathon* suggests that bankruptcy judges can fully adjudicate only those matters at the "core of the federal bankruptcy power." *Marathon,* 458 U.S. at 71, 102 S.Ct. at 2871. The matters at the core of the bankruptcy power are those directly pertaining to the administration of the debtor-creditor relationship. *Id.*[3] Consequently, the 1984 Amendments divided civil proceedings into "core proceedings"[4] and "non-core proceedings."[5] *See* 28 U.S.

2. Local Rule B–105 provides in pertinent part:
 (a) Any and all cases under title 11 and any and all proceedings arising in or related to a case under title 11 are referred to the bankruptcy judges for the District of Utah, for consideration and resolution consistent with the law....

3. Justice Brennan observed that the "restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights." *Marathon,* 458 U.S. at 71, 102 S.Ct. at 2871.

4. In particular, core proceedings are those matters which arise in title 11 cases or arise under title 11. 28 U.S.C. § 157(b)(1). Core proceedings do not include matters "related" to a case under title 11. Section 157(b)(2) lists what matters are included within the scope of core proceedings:
 (2) Core proceedings include, but are not limited to—
 (A) matters concerning the administration of the estate;
 (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;
 (C) counterclaims by the estate against persons filing claims against the estate;
 (D) orders in respect to obtaining credit;
 (E) orders to turn over property of the estate;
 (F) proceedings to determine, avoid, or recover preferences;
 (G) motions to terminate, annul, or modify the automatic stay;
 (H) proceedings to determine, avoid, or recover fraudulent conveyances;
 (I) determinations as to the dischargeability of particular debts;
 (J) objections to discharges;
 (K) determinations of the validity, extent, or priority of liens;
 (L) confirmations of plans;
 (M) orders approving the use or lease of property, including the use of cash collateral;
 (N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and
 (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.
 *See also,* 1 *Collier on Bankruptcy* ¶ 3.01[c] (15th ed. 1987).

5. Non-core proceedings include matters that are not core proceedings but are otherwise related to a case under title 11. 28 U.S.C. § 157(c)(1). Non-core or related proceedings include (1) causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541, and (2) suits between third parties which affect the administration of the bankruptcy estate. 1 *Collier on Bankruptcy* ¶ 3.01[c][iv] at 3–25 (15th ed. 1987). The Tenth Circuit has described related proceedings as "those civil proceedings that, in the absence of bankruptcy, could have been brought in a district court or state court." *In re Colorado Energy Supply, Inc.,* 728 F.2d 1283, 1286 (10th Cir.1984).

Concerning the present matter, a suit on a prepetition contract or account receivable is not a matter at the core of the bankruptcy power. *In re Nell,* 71 B.R. 305, 308 (D.Utah 1987) (citing

C. § 157(b)-(c). The amended Code permits bankruptcy courts to enter final orders and judgments in core proceedings. 28 U.S.C. § 157(b). The bankruptcy court cannot enter final orders relating to non-core proceedings, unless the parties consent, but must submit proposed findings of fact and conclusions of law to a district court judge who will enter a final order. At the district court level, the parties are entitled to a *de novo* review of any matters to which a party has timely and specifically objected. 28 U.S.C. § 157(c)(1).

Consistent with this jurisdictional scheme, section 157(d) of title 28 enables the district court to withdraw the reference of a bankruptcy case or proceeding from the bankruptcy court in order to exercise its original jurisdiction over the matter. Section 157(d) provides as follows:

(d) The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regu-

lating organizations or activities affecting interstate commerce.

Permissive or mandatory withdrawal of the reference, as described by the statute, is available under subsection (d) of section 157. Consistent with 28 U.S.C. § 157(d), Bankruptcy Rule 5011(a) provides that a motion for withdrawal of a case or proceeding shall be heard by the district court after the motion is properly filed and transferred to the district court by the bankruptcy court.[6]

■■■■ Generally, motions to withdraw the reference of a bankruptcy case or proceeding should be timely made in order to avoid delaying the expeditious administration of the estate. Section 157(d) of title 28 specifically requires that motions to withdraw the reference must be "timely" made by a party.[7] Section 157(d) does not expressly require that the court's own motion be timely made. Conceivably, the court could withdraw the reference of a case or adversary proceeding at any time if "cause" is shown. *See White Motor Corp. v. Citibank, N.A.*, 704 F.2d 254, 265 (6th Cir.1983). However, the court's own motion to withdraw the reference should be made as promptly as possible in light of the developments in the bankruptcy case or proceeding and when no substantial preju-

---

*Northern Pipeline Const. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 71, 102 S.Ct. 2858, 2871, 73 L.Ed.2d 598 (1982)). Accordingly, the bankruptcy court determined that the adversary proceeding was a non-core matter.

**6.** Local administrative rules describe the proper procedure for filing motions to withdraw the reference in the bankruptcy court. *See* Local Rule B–106; *54th & Harper, et al. v. Southmark Corp. et al.,* 82 B.R. 590 (D.Utah 1988) (Memorandum Decision and Order).

**7.** Local Rule B–106(2) and (3) of the District Court Rules of Bankruptcy Practice and Procedure establish when a motion to withdraw the reference of an adversary proceeding is "timely" brought by a party. If the movant is an original plaintiff, the motion must be filed within twenty days after the proceeding is commenced. Local Rule B–106(2). If the movant is a defendant, intervenor or added party, the motion must be filed within twenty days after the movant has entered an appearance or been served with a summons or notice. Local Rule B–106(3). These local rules require movants to move quickly for a withdrawal of the reference regarding an adversary proceeding in order to

avoid scheduling delays and to further the expeditious administration of the estate.

Whenever possible, Local Rule B–106(2) and (3) should be observed by parties seeking a withdrawal of the reference concerning an adversary proceeding in the interest of expediting the administration of the estate. However, this court realizes that from a practical standpoint a party in an adversary proceeding may have to make an untimely motion to withdraw the reference in order to encourage the district court to withdraw the reference on its own motion when developments in the bankruptcy case indicate that such a motion is appropriate under the circumstances.

The local rules do not establish when a motion to withdraw the reference of a case or other contested matter is "timely" made. Nonetheless, such a motion should be made when developments in the bankruptcy case indicate that a motion to withdraw the reference is appropriate and when the motion will not prejudice the nonmoving parties. *See e.g., Burger King Corp. v. B–K of Kansas, Inc.,* 64 B.R. 728 (D.Kan.1986).

dice will result to any party. *See e.g. Burger King Corp. v. B–K of Kansas, Inc.,* 64 B.R. 728 (D.Kan.1986); *Interconnect Telephone Services, Inc. v. Farren,* 59 B.R. 397 (S.D.N.Y.1986); *In re Baldwin–United Corp.,* 57 B.R. 751 (S.D.Ohio 1985).

*Cause for Permissive Withdrawal of the Reference:*

Section 157(d) of title 28 permits a district court to permissively withdraw the reference of a bankruptcy case or proceeding "for cause shown." What constitutes "cause" for withdrawing the reference is not described in the statute, legislative history or made clear under case law.

█ Nevertheless, the Fifth Circuit has instructed district courts, in determining whether cause to withdraw the reference exists, to consider the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, conserving the resources of debtors and creditors, and expediting the bankruptcy process. *Holland America Ins. Co. v. Succession of Roy,* 777 F.2d 992, 999 (5th Cir.1985). Furthermore, a district court should consider whether the bankruptcy court can hold a jury trial, keeping in mind that the *Marathon* decision defines the outer boundary of the referred jurisdiction of the bankruptcy courts. *Holland,* 777 F.2d at 998–99.

█ Congress intended to have bankruptcy proceedings adjudicated in the bankruptcy court unless a contravening interest required withdrawing the reference of a bankruptcy case or proceeding. *In re DeLorean Motor Co.,* 49 B.R. 900, 912 (Bankr.E.D.Mich.1985). To further the goals of promoting uniformity in bankruptcy administration, conserving the resources of creditors and debtors, and expediting the bankruptcy process, the Utah District Court has generally referred all bankrupt-

cy cases and all proceedings arising in or related to a bankruptcy case to the bankruptcy judges in this district for resolution. Local Rule B–105. Consequently, cause to withdraw this reference will be found in only a narrow set of circumstances.

█ After carefully reviewing the *Holland* decision and other cases on the subject, this court concludes that a permissive withdrawal of the reference from the bankruptcy court is generally appropriate when the interest of judicial economy would be served or when a party has a right to a jury trial.[8] In any event, a permissive withdrawal of the reference is within the sound discretion of the court and predicated upon "cause" shown on a case by case basis.

█ Concerning the present matter, the defendant's right to a jury trial persuades this court to withdraw the reference of this non-core adversary proceeding from the bankruptcy court. In the adversary proceeding, Wright has made a timely demand for a jury and clearly has a seventh amendment right to a jury trial. Wright also has not consented to having the bankruptcy court enter a final judgment.

The Supreme Court's *Marathon* decision suggests that it would be an unconstitutional delegation of power to permit a bankruptcy judge to preside over jury trials absent consent of the parties. Consequently, it appears that bankruptcy judges do not have the authority to preside at jury trials in non-core proceedings without the consent of the litigants. In light of these circumstances, a withdrawal of the reference from the bankruptcy court is proper in order to facilitate a jury trial before the district court.

1. *Bankruptcy Judges Cannot Preside Over Jury Trials in Non–Core Proceedings Without Consent of the Litigants*

The question of whether a bankruptcy judge can conduct a jury trial has been the

---

**8.** *See generally In re Landbank Equity Corp.,* 77 B.R. 44 (E.D.Va.1987); *Pied Pier Casuals, Inc. v. Ins. Co. of State of Pa.,* 72 B.R. 156 (S.D.N.Y. 1987); *In re Globe Parcel Service, Inc.,* 71 B.R. 323 (E.D.Pa.1987); *M & E General Contractors, Inc. v. Kugler–Morris General Contractors, Inc.,*

67 B.R. 260 (N.D.Tex.1986); *In re McCormick,* 67 B.R. 838 (D.Nev.1986); *In re Lion Capital Group,* 48 B.R. 329 (S.D.N.Y.1985); *In re Wisconsin Steel Co.,* 48 B.R. 753 (N.D.Ill.1985); *In re Proehl,* 36 B.R. 86 (W.D.Va.1984).

subject of considerable controversy and dispute. Prior to *Marathon,* it appeared that bankruptcy judges had the statutory authority to conduct jury trials. After the *Marathon* decision, Congress substantially modified the jurisdictional scheme of the bankruptcy system in the 1984 Amendments to the Bankruptcy Code. In light of the *Marathon* decision and these jurisdictional modifications, controversy surrounding the jury trial issue still exists.

Before the *Marathon* decision in 1982, sections 1471 and 1480(a) of title 28, promulgated under the 1978 Bankruptcy Reform Act, could be interpreted to extend to bankruptcy judges the authority to preside over jury trials and enter final judgments. Section 1471 provided in relevant part:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

(c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.

Section 1480(a) stated:

Except as provided in subsection (b) of this section, this chapter and title 11 do not affect any right to trial by jury, in a case under title 11 or in a proceeding arising under title 11 or arising in or related to a case under title 11, that is provided by any statute in effect on September 30, 1979.

Read together, these pre–*Marathon* statutes gave a pervasive grant of Article III jurisdiction to the bankruptcy judges. Un-

der the statutes, it seemed that bankruptcy judges had the authority to conduct jury trials.

On June 28, 1982, the United States Supreme Court in *Marathon* declared that the broad jurisdiction given the bankruptcy judges under section 1471 was in violation of Article III of the Constitution. Writing for a plurality, Justice Brennan concluded that the 1978 Bankruptcy Reform Act unconstitutionally vested all the "essential attributes" of the judicial power, including the power to preside over jury trials, in the "adjunct" bankruptcy court. *Marathon,* 458 U.S. at 85, 87, 102 S.Ct. at 2878, 2880. The obvious objective of the *Marathon* decision was to retract the pervasive grant of authority given the bankruptcy judges pursuant to 28 U.S.C. § 1471. *Marathon,* 458 U.S. at 84–87, 102 S.Ct. at 2878–2880.

In the confusion that followed the *Marathon* decision, the Judicial Conference of the United States drafted the Model Emergency Bankruptcy Rule, which in part, prohibited bankruptcy judges from conducting jury trials.[9] Nevertheless, the Supreme Court, acting pursuant to its rulemaking power, proposed new Bankruptcy Rule 9015. Rule 9015 outlined the procedures for a jury trial in the bankruptcy court. Proposed Rule 9015 became effective by operation of statute[10] on August 1, 1983.

Thereafter, Congress enacted the 1984 Amendments to the Bankruptcy Code to remedy the jurisdictional defects highlighted by the *Marathon* decision. Under the 1984 Amendments, bankruptcy judges can *hear* and *determine* only "core" proceedings arising under title 11, as referred by district courts. 28 U.S.C. § 157(a), (b)(1) (emphasis added). Under section 157(c)(1), a bankruptcy judge only can *hear* a non-core proceeding.[11] The district court must enter the final order after reviewing the bankruptcy judge's proposed findings and conclusions and making a *de novo* review of matters objected to. 28 U.S.C.

---

**9.** *See* Model Emergency Rule (d)(1)(D) (West pamphlet 1983).

**10.** 28 U.S.C. § 2075.

**11.** However, if the parties consent, the bankruptcy court can hear and determine a non-core proceeding, and thereafter the parties can appeal the final order to the district court. 28 U.S.C. § 157(c)(2).

§ 157(c)(1). Unfortunately, the 1984 Amendments did not expressly address whether bankruptcy judges could preside over jury trials.

Nonetheless, in August, 1987, Bankruptcy Rule 9015 was repealed by the Supreme Court. The Supreme Court abrogated Bankruptcy Rule 9015 because the rule had been construed as conferring a right to a jury trial in bankruptcy courts. Such a construction improperly enlarged section 1411 of title 28, in contravention to 28 U.S.C. § 2075, which requires that the rules "shall not abridge, enlarge, or modify any substantive right." Section 1411 of title 28, added by the 1984 Amendments, preserves a right to a jury trial for personal injury or wrongful death claims, which 28 U.S.C. § 157(b)(5) requires to be tried in the district court.[12] Because courts had construed Rule 9015 as conferring a right to a jury trial on other matters, Rule 9015 was repealed.[13] *See generally* Advisory Committee Note (1987) to Bankruptcy Rule 9015.

The Court's primary concern in the *Marathon* decision was that the 1978 Bankruptcy Code enabled non-Article III bankruptcy judges to exercise and encroach upon the judicial power reserved for Article III courts when bankruptcy judges adjudicated traditional, state common law actions. *Marathon*, 458 U.S. at 84, 102 S.Ct. at 2878 (Brennan, J. plurality opinion); *see also* 458 U.S. at 89–92, 102 S.Ct. at 2880–2882 (Rehnquist, J., concurring); 458 U.S. at 92, 102 S.Ct. at 2882 (Burger, C.J. dissenting). The Supreme Court has since narrowed its interpretation of *Marathon* to reflect this primary concern in later decisions.[14] Clearly, *Marathon* establishes that Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants. *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 584, 105 S.Ct. 3325, 3334, 87 L.Ed.2d 409 (1985) (emphasis added).

The Court's narrow holding in *Marathon* confirms that bankruptcy judges do not have the authority to render a final adjudication of a non-core proceeding without the consent of the parties. However, if the litigants consent, it follows that a bankruptcy judge can preside over a jury trial and request the clerk to enter a final judgment in a non-core proceeding. In a similar manner, litigants can consent to a magistrate presiding over a jury trial in a civil action pursuant to 28 U.S.C. § 636(c)(1).

Unlike the Federal Magistrates Act, however, Congress has not expressly delegated the power to preside over jury trials to bankruptcy judges by statute. Nevertheless, 28 U.S.C. § 157(c)(2) allows the parties to consent to having the bankruptcy court enter a final order in a non-core proceeding. *In re Nell*, 71 B.R. 305, 309 (D.Utah 1987). Several courts have concluded that section 157 authorizes bankruptcy judges to preside over non-core jury trials with the litigants' consent. *In re McCormick*, 67 B.R. 838, 842 (D.Nev.1986); *In re Crabtree*, 55 B.R. 130, 133 (Bankr.E.D.Tenn. 1985); *In re Arnold Print Works, Inc.*, 54

12. The status of section 1480(a) is unclear because the 1984 Amendments did not include a general repealer of the provisions of the 1978 Bankruptcy Reform Act. Several courts have held, however, that section 1480(a) is no longer in effect. *See, e.g., In re Hendon Pools of Michigan, Inc.*, 57 B.R. 801, 802 (E.D.Mich.1986); *In re Chase & Sanborn Corp.*, 55 B.R. 538, 539 (Bankr.S.D.Fla.1985).

13. Presumably, courts had relied on Rule 9015 to authorize jury trials in core proceedings. Under traditional seventh amendment analysis, parties are not entitled to a jury trial concerning matters which are equitable in nature. Because bankruptcy courts are inherently courts of equity, core proceedings, which are equitable pro-

ceedings, should be decided by a bankruptcy judge. *See Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); *In re Harbour*, 840 F.2d 1165, 1171–78 (4th Cir.1988).

Although section 1411 of title 28 may appear to restrict the right to a jury trial to only personal injury and wrongful death actions, this provision cannot preclude a party's right to a jury trial as preserved by the seventh amendment. U.S. Const. article VI.

14. *See generally Commodity Futures Trading Commission v. Schor*, 478 U.S. 833, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986); *Thomas v. Union Carbide Agricultural Products, Co.*, 473 U.S. 568, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985).

B.R. 562, 569 (Bankr.Mass.1985); *In re Northern Design, Inc.,* 53 B.R. 25, 27 (Bankr.Vt.1985).

Section 157(c) is modeled after the magistrate system of referral.[15] By contrast, the Federal Magistrate's Act expressly provides that magistrates can preside over jury trials with the consent of the parties. 28 U.S.C. § 636(c)(1). The Supreme Court has upheld the Federal Magistrate's Act as a constitutional system of referral because it is based on the district court retaining ultimate control over final decisions. *United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). In addition, ten circuit courts have ruled that magistrates can constitutionally conduct jury trials in civil actions with the consent of the parties pursuant to 28 U.S.C. § 636(c). *K.M.C. Co., Inc. v. Irving Trust Co.,* 757 F.2d 752, 755 (6th Cir.1985); *Gairola v. Commonwealth of Virginia Department of General Services,* 753 F.2d 1281 (4th Cir.1985); *Fields v. Washington Metropolitan Area Transit Authority,* 743 F.2d 890, 893–95 (D.C.Cir.1984); *Geras v. Lafayette Display Fixtures, Inc.,* 742 F.2d 1037, 1045 (7th Cir.1984); *Lehman Brothers Kuhn Loeb, Inc. v. Clark Oil & Refining Co.,* 739 F.2d 1313, 1316 (8th Cir.1984); *Puryear v. Ede's Ltd.,* 731 F.2d 1153, 1154 (5th Cir.1984); *Collins v. Foreman,* 729 F.2d 108, 120 (2nd Cir.1984), *cert. denied,* 469 U.S. 870, 105 S.Ct. 218, 83 L.Ed.2d 148 (1984); *Goldstein v. Kelleher,* 728 F.2d 32, 36 (1st Cir.1984), *cert. denied,* 469 U.S. 852, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984); *Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix, Inc.,* 725 F.2d 537 (9th Cir.1984) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984); *Wharton–Thomas v. United States,* 721 F.2d 922, 925–26 (3rd Cir.1983).

 Moreover, a clear majority of courts hold that the Constitution does not prohibit jury trials in bankruptcy courts if a right to a jury trial exists. *See In re Gaildeen Industries, Inc.,* 59 B.R. 402, 405–06 (N.D.Cal.1986); *In the Matter of George Woloch Co.,* 49 B.R. 68, 69–70 (E.D. Pa.1985); *In re OPM Leasing Services,* 48 B.R. 824, 830 (S.D.N.Y.1985); *In re Lombard–Wall, Inc.,* 48 B.R. 986, 992 (S.D.N.Y. 1985); *In re Gibbons Constr., Inc.,* 46 B.R. 193, 194 (E.D.Ky.1984); *In re Price–Watson Co.,* 66 B.R. 144, 159–60 (Bankr.S.D. Tex.1986); *In re Rodgers & Sons, Inc.,* 48 B.R. 683, 687 (Bankr.E.D.Okla.1985); *In re River Transportation Co.,* 35 B.R. 556 (Bankr.M.D.Tenn.1983). *But cf. In re Proehl,* 36 B.R. 86, 87 (W.D.Va.1984); *In re Brown,* 56 B.R. 487, 490 (Bankr.D.Md. 1985); *In re American Energy, Inc.,* 50 B.R. 175, 181 (Bankr.D.N.D.1985).

Nevertheless, the second clause of the seventh amendment prohibits any reexamination of facts tried by a jury, except as permitted at common law. The restrictive jury review provision of the second clause of the seventh amendment must be considered when reading 28 U.S.C. § 157(c)(1), requiring the district court to make a *de novo* review of all non-core proceedings heard by the bankruptcy court. The seventh amendment prohibits the district court from conducting a second jury trial and a *de novo* review of the jury's verdict. It makes no practical sense to allow a bankruptcy judge to conduct a jury trial in a non-core proceeding when the bankruptcy judge lacks the ability to enter a final judgment. *See* 28 U.S.C. § 157(c)(1). Consequently, the seventh amendment and considerations of judicial economy require that jury trials in non-core proceedings be conducted in the district court unless the parties consent to having the bankruptcy court conduct a jury trial and enter a final judgment.

After reviewing the *Marathon* decision and the jurisdictional scheme implemented by the 1984 Amendments in response to *Marathon,* this court concludes that a bankruptcy judge cannot try a jury case in a non-core proceeding absent consent by the parties. Moreover, the seventh amendment generally prohibits the reexamination of a jury's verdict, which could inadvertent-

---

**15.** *In re Nell,* 71 B.R. at 308 n. 3; *see also* the remarks of Rep. Kastenmeier at 130 Cong. Rec.

H1109 (daily ed. March 20, 1984).

ly occur in connection with a *de novo* review pursuant to 28 U.S.C. § 157(c)(1). Consequently, a bankruptcy judge does not have the authority to try a jury case in a non-core proceeding without the consent of the parties.

Nevertheless, *Marathon* and section 157(c)(2) of title 28 permits a bankruptcy judge to try a jury case in a non-core proceeding with the litigants' consent. Most circuit courts have held that 28 U.S.C. § 636(c) of the Federal Magistrate's Act, allowing magistrates to conduct jury trials, is a constitutional provision provided that the parties consent to a jury trial before a magistrate. Because the bankruptcy procedure regarding non-core proceedings is modeled after the Federal Magistrate's Act, it logically follows that bankruptcy judges can constitutionally conduct jury trials in non-core proceedings with the consent of the parties.

### 2. *Right to a Jury Trial*

■ Although a bankruptcy judge does not have the constitutional authority to conduct a jury trial in a non-core proceeding absent the parties' consent, this reason alone is not sufficient cause to withdraw the reference of a bankruptcy proceeding. In order to show cause to withdraw the reference a party also must have the right to a jury trial and must not consent to the bankruptcy judge's final adjudication of the matter.

The right to a jury trial is a fundamental privilege of the American judicial system.[16] Although the framers of the Constitution did not address the right of trial by jury in civil cases, the First Judiciary Act of September 24, 1789 provided for the right of a jury trial in civil cases at common law. In 1791, the seventh amendment was formally adopted.

---

**16.** *See generally* C. Wright and A. Miller, *Federal Practice and Procedure* § 2301 (1971).

**17.** *Minneapolis & St. Louis R. Co. v. Bombolis,* 241 U.S. 211, 36 S.Ct. 595, 60 L.Ed. 961 (1916).

**18.** However, the practical and conceptual difficulties in applying this test were recognized by the dissenting justices in *Ross:*

---

The seventh amendment applies only to the federal courts[17] and states as follows:

> In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved and no fact tried by a jury, shall be otherwise re-examined in any court of the United States, than according to the rules of the common law.

The Supreme Court has interpreted the seventh amendment to preserve the right to a jury trial in any action that would have customarily been brought before an English law court. *Tull v. United States,* —— U.S. ——, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987).

The phrase "common law" as contained in the seventh amendment embraces all suits in which *legal* rights are to be determined, as distinct from suits in equity or admiralty. *Curtis v. Loether,* 415 U.S. 189, 193, 94 S.Ct. 1005, 1007, 39 L.Ed.2d 260 (1974). The Supreme Court recognizes that the seventh amendment extends beyond common law forms of action existing in 1791 and includes newly created rights which would have been enforced in a common law suit. *Id.* Under present seventh amendment analysis, there is less emphasis on whether a close equivalent to the subject proceeding existed in 1791. Instead, courts consider whether the action involved rights and remedies "of the sort traditionally enforced in an action at law, rather than in an action in equity or admiralty." *Pernell v. Southall Realty,* 416 U.S. 363, 374-75, 94 S.Ct. 1723, 1729-30, 40 L.Ed.2d 198 (1974). The "legal" character of an issue is determined by considering (1) the manner in which the question was treated prior to the merger of law and equity in 1938; (2) the remedies sought, and, (3) the practical abilities and limitations of juries. *Ross v. Bernhard,* 396 U.S. 531, 538 n. 10, 90 S.Ct. 733, 738 n. 10, 24 L.Ed.2d 729 (1970).[18]

> The fact is, of course, that there are, for the most part, no such things as inherently "legal issues" or inherently "equitable issues." There are only factual issues, and, "like chameleons [they] take their color from surrounding circumstances."
>
> *Ross,* 396 U.S. at 550, 90 S.Ct. at 744.

In the present adversary proceeding, the issues involved have a clear "legal" rather than "equitable" character. The pleadings clearly indicate that the action concerns a traditional common law action under state law involving a breach of contract dispute. The plaintiffs seek a legal remedy of damages from the defendants' alleged repudiation of the contract. Consequently, this action seeking damages for breach of contract is legal in nature and triable by a jury.[19]

Wright not only is entitled to a jury trial under the seventh amendment, but also has not consented to having the bankruptcy judge enter a final judgment regarding this adversary proceeding. Under these circumstances, the bankruptcy court has no authority to conduct a jury trial in this non-core proceeding. It is therefore appropriate to withdraw the reference of this non-core adversary proceeding and provide Wright a jury trial before the district court. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982); U.S. Const. Amend. VII; *In re Astrocade, Inc.*, 79 B.R. 983 (Bankr.S.D.Ohio 1987).

### Conclusion

This court, on its own motion, determines that cause exists to withdraw the reference concerning this adversary proceeding. In particular, this court holds that bankruptcy judges do not have the judicial power to conduct jury trials in non-core proceedings in which the parties have not consented to having the bankruptcy judge enter a final judgment. Consequently, this court concludes that it can withdraw the reference regarding the adversary proceeding because Wright has a right to a jury trial and has not consented to a final determination by the bankruptcy court.

Accordingly, and based upon good cause appearing,

IT IS HEREBY ORDERED that the reference regarding Adversary Proceeding No. 86PC–0996 in the bankruptcy case of American Community Services, Inc. is withdrawn to the district court for a final adjudication. The clerk of the court is hereby ORDERED to transfer this adversary proceeding to the district court.

---

**19.** 9 C. Wright and A. Miller, *Federal Practice and Procedure*, § 2316 at 77–78 (1971).