In re T.R. PARIS & FAMILY, INC., and Theodore R. Paris and Sandra C. Paris, Debtors.

T.R. PARIS & FAMILY, INC., Plaintiffs,

v.

The FIRST NATIONAL BANK IN ROBINSON, Defendant.

Bankruptcy Nos. 86–31175, 88–40182. Adv. No. 88–0002.

United States Bankruptcy Court, S.D. Illinois.

Aug. 18, 1988.

Tommy L. Strunk, Indianapolis, Ind., and Brent Holmes, Mattoon, Ill., for plaintiffs.

Joel A. Kunin, E. St. Louis, Ill., and Cox, Phillips, Weber, Tedford & Heap, Robinson, Ill., for defendant.

## MEMORANDUM AND ORDER

KENNETH J. MEYERS, Bankruptcy Judge.

After the First National Bank of Robinson ("Bank") filed its proof of claim as creditor in the Chapter 11 proceedings of T.R. Paris & Family, Inc., and Theodore and Sandra Paris ("debtors"), the debtors commenced an adversary proceeding against the Bank, seeking damages for the Bank's alleged wrongful acts in failing to renew letters of credit to debtors' suppliers and in exercising control over debtors' business affairs. The issue before this Court is whether debtors have a right to jury trial on their complaint and, if so, whether the bankruptcy court should conduct such jury trial.

Debtors' second amended complaint for damages contains six counts setting forth alternative bases for relief for damages resulting from the Bank's alleged actions regarding a financing arrangement between the Bank and debtors. The complaint alleges that at various times since 1982, plaintiff T.R. Paris & Family, Inc., which was in the retail variety store business, borrowed money on a demand note basis from the Bank. Plaintiffs Theodore and Sandra Paris personally guaranteed these demand notes. In addition, since September 1982 the Bank maintained a line of credit with T.R. Paris & Family, Inc., by issuing letters of credit to various suppliers. The debtors allege that the Bank, beginning in July 1985, failed to renew the letters of credit to debtors' suppliers without providing notice to debtors that the Bank intended to cancel such letters of credit. The complaint further alleges that the Bank, through its officers, demanded that debtors close certain of its stores with threats to call all debtors' demand notes due and payable.

Counts I and II of debtors' complaint allege that the Bank, in failing to renew the letters of credit without notice of their intent to cancel them, breached its duty of good faith implied under the Uniform Commercial Code and the parties' financing contracts, respectively. Count III contains a claim of fraudulent representation by the Bank in threatening to call debtors' demand notes, while Count IV alleges that such threats constituted duress. Finally, Count V alleges that the Bank intentionally interfered with debtors' business, and Count VI alleges that the Bank breached its fiduciary duty owing to debtors by reason of the Bank's control over and interference in debtors' business. By their complaint, debtors seek both compensatory and punitive damages from the Bank.

Prior to the filing of debtors' complaint, the Bank filed its proof of claim in debtors' Chapter 11 proceeding. The Bank's claim is based on three demand notes of the corporate debtor that were guaranteed by the individual debtors. Debtors' complaint contains no allegation challenging the validity of the notes or the personal guaranties and makes no objection or reference to the Bank's proof of claim. As noted, debtors have requested a jury trial on their complaint, which the Bank opposes.

Whether there is a right to jury trial in proceedings before the bankruptcy court and, if so, whether such trial may be conducted by the bankruptcy court are questions that have been much debated since the Supreme Court determined that the bankruptcy court's jurisdictional grant in the Bankruptcy Reform Act of 1978 was unconstitutional (see *Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (*Marathon*)) and Congress attempted to remedy the constitutional defects of the Act in the 1984 amendments (Bankruptcy Amendments and Federal Judgeship Act of 1984). A brief overview of the history of jury trials in bankruptcy proceedings is necessary to this Court's analysis of the right to jury trial in the present case.

Prior to the 1978 Act there was no general right to jury trial in the bankruptcy court as to matters coming within the bankruptcy court's summary, or equitable, jurisdiction. *See Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966). In 1978, in an attempt to resolve the problems of the distinction between summary and plenary jurisdiction, Congress granted bankruptcy courts comprehensive jurisdiction over all controversies arising out of bankruptcy cases (*see* 28 U.S.C. § 1471(c)) and provided that the statutory right to jury trial that presently existed in bankruptcy cases would remain unaffected (28 U.S.C. § 1480). (Omitted pursuant to Pub.L. 98–353, July 10, 1984).

In 1982, the Supreme Court held in *Marathon* that the granting of Article III powers to the bankruptcy courts was an unconstitutional delegation of Article III powers. In a list of powers traditionally reserved for Article III courts, the Supreme Court noted that bankruptcy courts had been granted the right to hold jury trials. An Emergency Rule of Reference, adopted by the district courts in response to *Marathon*, specifically prohibited bankruptcy judges from conducting jury trials. Subsequently, in August 1983, the new Bankruptcy Rules promulgated by the Supreme Court became effective. Rule 9015 of the Bankruptcy Rules provided that issues "triable of right by jury shall ... be by jury" and set forth detailed provisions for bankruptcy judges in conducting jury trials. In 1987, following repeal of section 1480 by the 1984 amendments, Rule 9015 was abrogated with the comment that a similar rule could be adopted if a court of appeals or the Supreme Court were to define a right to jury trial in bankruptcy matters. *See* Bankr.Rule 9015, advisory committee note (1987).

The Bankruptcy Amendments and Federal Judgeship Act of 1984, enacted in July 1984, set forth a jurisdictional scheme distinguishing between "core" proceedings, in which bankruptcy judges may enter final judgment, and "noncore" or related proceedings, in which bankruptcy judges must submit proposed findings of fact and conclusions of law to the district court for

entry of judgment after *de novo* review of matters to which there has been an objection. *See* 28 U.S.C. § 157. The 1984 amendments were silent on the authority of bankruptcy courts to conduct jury trials in bankruptcy cases and proceedings. Section 1411(a) of Title 28 provided merely that "this chapter and title 11 do not affect any right to trial by jury that an individual has under applicable nonbankruptcy law with regard to a personal injury or wrongful death tort claim." 28 U.S.C. § 1411(a). Section 157(b)(5) directed:

> The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court.... 28 U.S.C. section 157(b)(5).

The categorization of claims as "core" or "noncore" has become significant in many decisions concerning the powers of bankruptcy courts and the right to jury trial in bankruptcy proceedings. In determining whether a right to jury trial exists, some courts have taken the view that jury trials are not permitted in core proceedings, reasoning that such proceedings resemble summary jurisdiction cases under the old bankruptcy act in which there was no right to jury trial. *In re Global International Airways Corp.*, 81 B.R. 541 (W.D.Mo.1988). As stated in *In re I.A. Durbin, Inc.*, 62 B.R. 139, 145 (S.D.Fla.1986), these courts hold that

> a core proceeding is a proceeding created by the bankruptcy code and since bankruptcy is equitable in nature, all core proceedings are also equitable. Under the 7th amendment, there is no right to a trial by jury in a court of equity, therefore, there is no right to trial by jury in core proceedings. (Citations omitted.)

Courts adopting the core/noncore approach to jury trials rely on the pre-*Marathon* case of *Katchen v. Landy*, in which the Supreme Court ruled that there was no right to jury trial in a preference action brought by the trustee against a creditor that had filed a claim against the bankruptcy estate. The *Katchen* court, acknowledging that both the creditor's claim and the preference action would constitute legal actions triable before a jury if brought in a non-bankruptcy context, held that such issues arising as part of the process of allowance and disallowance of claims were triable in equity, as bankruptcy law converted the "creditor's legal claim into an equitable claim to a pro rata share of the *res* [,]" which could not be determined until the issue of preference was resolved. *Katchen*, 382 U.S. at 336, 86 S.Ct. at 476 *see also In re Beugen*, 81 B.R. 994 (Bankr. N.D.Cal.1988). Since the determination of an objection to the creditor's claim was in the mainstream of the bankruptcy process enacted by Congress under its power "to establish uniform laws on the subject of bankruptcy" (*Katchen*, 382 U.S. at 336, 86 S.Ct. at 476), this determination was properly placed in the bankruptcy court. Thus, pursuant to *Katchen*, courts have held that where Congress has incorporated a cause of action in which there would otherwise be a right to trial by jury into the bankruptcy code as a core proceeding, Congress may properly commit such action to a specialized court of equity, where it would be tried without a jury. *See In re Visidata*, 84 B.R. 673 (Bankr.N.D.Cal.1988): preference action; *In re Smith*, 84 B.R. 175 (Bankr.D.Ariz.1988): dischargeability action; *see also Matter of Honeycomb, Inc.*, 72 B.R. 371 (Bankr.S.D.N.Y.1987): preference and wrongful setoff action asserted as counterclaim.

Other courts considering the right to jury trial in bankruptcy proceedings have taken the position that the type of forum chosen as the arena for litigation is not dispositive on the question of whether a right to jury trial exists. These courts hold that the Seventh Amendment right to jury trial depends not on the character of the overall action but on the nature of the issues to be tried. *See American Universal Insurance Co. v. Pugh*, 821 F.2d 1352 (9th Cir.1987); *In re Globe Parcel Service, Inc.*, 75 B.R. 381 (E.D.Pa.1987); *In re Rodgers & Sons, Inc.*, 48 B.R. 683 (Bankr. E.D.Okla.1985). In deciding entitlement to jury trials under this view, three factors must be examined to determine the nature of the claim as legal or equitable: first, the customary treatment of the claim prior to the merger of law and equity; second, the

nature of the remedy sought; and, third, the practical abilities and limitations of juries. *Ross v. Bernhard,* 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970); *American Universal Insurance Co.*

■ In the instant case debtors' action for damages against the Bank contains legal claims that would ordinarily be subject to trial by jury. To the extent the various counts of debtors' complaint allege causes of action upon which relief may be granted,[1] they set forth common-law type claims sounding in contract (Counts I and II), fraud (Count III), and tort (Counts IV, V, and VI) as to which the right to jury trial is preserved by the Seventh Amendment. *See In Re Globe Parcel Service, Inc.:* breach of contract, negligence, and breach of fiduciary duty claims are triable at law; *In re Frantz,* 82 B.R. 835 (Bankr.S.D.Tex. 1988): right to jury trial on fraud issue. With regard to the second factor, debtors' complaint clearly seeks a legal remedy of money damages rather than an equitable one. Each count of debtors' complaint contains a specific prayer for compensatory and punitive damages for injuries resulting from the Bank's alleged actions. Finally, as to the third criterion, the Court perceives no reason why trial of this case would be beyond the practical abilities and limitations of an average jury. Thus, under the law/equity approach of determining the right to jury trial in actions brought in a bankruptcy proceeding, debtors would be entitled to a jury trial on their complaint against the Bank. *Cf. In re Globe Parcel Service, Inc.:* right to jury trial in bankruptcy trustee's action against bank and casino seeking monetary damages for negligence, breach of fiduciary duty, conversion, and breach of contract.

■ In its motion opposing debtors' jury trial demand, the Bank urges the Court to follow the core/noncore approach to determining the right to jury trial in bankruptcy and asserts that, under this approach, there would be no right to jury trial because

debtors' complaint is a counterclaim and thus a core proceeding under 28 U.S.C. § 157(b)(2)(C). The Bank notes that the case of *In re Globe Parcel Service, Inc.,* upon which debtors rely, involved a noncore proceeding against parties that were not otherwise involved in the bankruptcy proceeding. The Bank maintains that the Court should follow the reasoning of *Katchen v. Landy* and hold that, despite debtors' right to jury trial of their legal action outside of bankruptcy court, when such action is brought in a bankruptcy proceeding against a creditor that has filed a proof of claim, the legal action becomes part of the equitable process of allowance and disallowance of claims against the estate and can be tried without a jury.

Section 157(b) delineates the core jurisdiction of the bankruptcy courts and provides in pertinent part:

(1) Bankruptcy judges may hear and determine ... all core proceedings arising under title 11 or arising in a case under title 11....

(2) Core proceedings include, but are not limited to—

.....

(C) counterclaims by the estate against persons filing claims against the estate.

28 U.S.C. § 157(b).

The broad description of "counterclaims" as core proceedings under § 157 has been open to interpretation and controversy since the enactment of § 157 following the Supreme Court's decision in *Marathon.* 1 *Collier on Bankruptcy,* § 3.01, at 3–41 to 3–43 (15th ed. 1987); *see In re Nanodata Computer Corp.,* 74 B.R. 766 (W.D.N.Y. 1987); *In re Leedy Mortgage Co., Inc.,* 62 B.R. 303 (E.D.Pa.1986); *In re I.A. Durbin; In re Beugen; In re Sturm,* 66 B.R. 325 (Bankr.N.D.Ill.1986). While the language of § 157(b)(2)(C) would seem to encompass all actions brought in a bankruptcy proceeding in which the defendant creditor has filed a proof of claim, courts considering

---

**1.** The Bank's motion to dismiss debtors' second amended complaint for failure to state a claim for which relief may be granted is currently pending before the Court. Consequently, the

Court expresses no opinion as to whether the various claims alleged by debtor's complaint constitute recognized causes of action under Illinois law.

the issue of whether a counterclaim based solely on state law claims can be said to constitute a core proceeding when the defendant has filed a proof of claim have expressed concern that such a reading would contravene the constitutional limitations of *Marathon*. *In re I.A. Durbin; see In re Nanodata Computer Corp.* In view of the rule of *Marathon* that "the restructuring of debtor-creditor relations, which is at the core of federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages" (*Marathon*, 458 U.S. at 71, 102 S.Ct. at 2871), such courts have declined to read § 157(b)(2)(C) literally to encompass actions that are only peripherally related to the bankruptcy process. *Cf. In re Nanodata Computer Corp.:* debtor's action for breach of warranty, breach of contract, intentional misrepresentation, and negligence not core proceeding merely because defendant had filed proof of claim in bankruptcy proceeding; *In re Leedy Mortgage Co., Inc.:* trustee's counterclaim seeking damages from accountant creditors for breach of contract and negligence in preparation of financial statements not part of typical administration of bankruptcy estate so that reference to bankruptcy court would be withdrawn; *but see In re I.A. Durbin:* debtor's counterclaim against bank alleging trespass, conversion, and unlawful replevin was core proceeding under plain language of § 157(b)(2)(C).

In the instant case debtors' action against the Bank derives from state law contract, fraud and tort principles that are unrelated to the question of the validity of the Bank's claims in the bankruptcy proceeding. Although debtors' complaint was filed subsequent to the Bank's proof of claim, it contains no allegation of invalidity of the notes or personal guaranties upon which the Bank's claim is premised, and debtors have made no objection to the Bank's proof of claim nor have they sought a set-off from the Bank on its proof of claim. Rather, debtors' action seeks affirmative relief of damages from the Bank for injuries allegedly arising out of their relationship with the Bank. While a recovery on debtors' complaint would increase the amount of property of debtors' estate subject to administration in bankruptcy, this factor alone is insufficient to render the action a core proceeding under § 157. Debtors' action is thus unlike the counterclaim in *Katchen* where determination of the creditor's proof of claim was dependent on the outcome of the trustee's preference action. The Court finds, therefore, that the rationale of *Katchen* that an action against one who has filed a proof of claim renders that action part of the equitable process of allowance and disallowance of claims is inapplicable in the instant case and cannot serve as a basis for denial of a jury trial on debtors' complaint.

The case of *In re Beugen,* cited by the Bank, in which there was no jury trial right on an action filed as a counterclaim is distinguishable from the instant case in that the determination of the creditor's claim there was affected by resolution of the counterclaim. The counterclaim in *Beugen* was a compulsory counterclaim involving an action for breach of a lease after the creditor filed a proof of claim for unpaid rent on the lease. The debtor answered the creditor's proof of claim alleging that the amount of rent had been overstated and additionally sought affirmative damages for breach of the lease and wrongful eviction. The court observed that both the claim and counterclaim turned upon the parties' respective rights and duties under a single lease and stated that the debtor's damage recovery on his counterclaim would "undoubtedly be influenced by whether he ha[d] performed his obligations under the lease." *Id.* at 996. The *Beugen* court, therefore, followed *Katchen* in holding that there was no right to jury trial on the debtor's counterclaim because the counterclaim was merely part of the controversy placed before the bankruptcy court by the creditor's filing a claim.

In the instant case, by contrast, debtors have not contested the Bank's proof of claim on the parties' promissory notes and personal guaranties. Any recovery by debtors on their complaint for damages will not affect the Bank's status as creditor or

its rights on the promissory note. Thus, the instant case is unlike *Beugen* where both the creditor's claim and debtor's counterclaim could be determined by trial on the counterclaim.

*Matter of Honeycomb,* cited by the Bank, is likewise distinguishable from the instant case in that the counterclaim there was brought to object to a creditor's claim as well as to recover wrongful setoffs and preferences from the creditor. The court characterized the counterclaim as a "defensive" action and noted that the counterclaim could not have been asserted in its present form but for the filing of the bankruptcy petition. In discussing the right to jury trial on the counterclaim, the court observed that many of the trustee's preference powers are entirely creations of federal statute. Since the preference action was a necessary part of the equitable claims resolution process of bankruptcy, the *Honeycomb* court found that it was equitable in nature and that there was no right to jury trial.

In the instant case, debtors' action against the Bank is based solely on state law and could have been brought in state court or in the federal district court (assuming jurisdictional requirements were met) even if debtors had not filed for bankruptcy protection. It is not an action made a part of the bankruptcy process by the provisions of the Bankruptcy Code, nor has it become so by the procedural context in which it was brought. (*Cf. In re Mauldin,* 52 B.R. 838 (Bankr.N.D.Miss.1985): damages action against bank for breach of contract based on bank's failure to honor line of credit and to participate in obtaining other financing for debtors was not core proceeding under § 157(b)(2)(C) where no objection was filed to bank's proof of claim and complaint was not structured as a counterclaim.) Debtors' action is legal in nature, and it is not so connected with the claims resolution process of bankruptcy that it must be tried without a jury as part of that process. A consideration of the substance of debtors' action leads to the conclusion that, rather than being at the core of the bankruptcy process, it is a noncore proceeding that is related to debtors' bankruptcy proceeding only because of its potential effect on the size of the estate to be administered in bankruptcy. *Cf. Matter of Wood,* 825 F.2d 90 (5th Cir.1987): claim against debtors alleging appropriation of corporate assets was related, noncore, proceeding in that suit was not based on any right created by federal bankruptcy law and was not proceeding that could arise only in bankruptcy.

■ Having determined that debtors' action is a noncore proceeding in which there is a right to jury trial, the Court must consider where such trial should be conducted. As discussed above, the authority of bankruptcy courts to hold jury trials was left unsettled by the 1984 amendments to the Bankruptcy Code enacted in response to *Marathon.* While some courts have relied on Rule 9015 to hold that bankruptcy courts have such authority (*see, e.g., In re Lombard–Wall, Inc.,* 48 B.R. 986 (S.D.N.Y. 1985); *Macon Prestressed Concrete co. v. Duke,* 46 B.R. 727 (M.D.Ga.1985)), these decisions should be disregarded since Rule 9015 has been abrogated pending a substantive determination of the right to jury trials in bankruptcy courts (*see* Bankr.Rule 9015 advisory committee note (1987)).

Other courts have found that bankruptcy courts have the implied power to hold jury trials based on the rationale that the 1984 amendments do not explicitly prohibit jury trials in matters other than personal injury or wrongful death claims. *See In re Rodgers & Sons, Inc.* There is, however, no express statutory authority for bankruptcy courts to conduct jury trials in cases where such right exists. Indeed, § 157(b)(5) makes clear that jury trials afforded by § 1411(a) in wrongful death and personal injury actions are to be held in the district court and not the bankruptcy court. The bankruptcy court, as an adjunct of the district court, is traditionally a court of equity in which no jury trials have been allowed. Since the district court is a court of law and equity and is empowered to hear jury trials, the Seventh Amendment right to jury trial can be preserved in appropriate cases by a jury trial in the district court.

In the instant case, the jurisdictional provisions for noncore proceedings make jury trial in the bankruptcy court impractical, as the bankruptcy court is unable to enter final judgment absent consent of the parties (*see* 28 U.S.C. § 157(c)(1)) and a second jury trial may be required in the district court upon its *de novo* review of the bankruptcy court's findings. *See In re American Community Services, Inc.*, 86 B.R. 681 (D.Utah 1988); *UNR Industries, Inc. v. Continental Insurance Co.*, 623 F.Supp. 1319 (N.D.Ill.1987); *Pied Piper Casuals, Inc. v. Insurance Co. of State of Pennsylvania*, 72 B.R. 156 (S.D.N.Y.1987); *Matter of Reda, Inc.*, 60 B.R. 178 (Bankr.N.D.Ill. 1986). The court in *Matter of Reda* observed:

> ...[I]t would make no sense in terms of judicial economy for the bankruptcy court to hold a jury trial in a noncore proceeding where the parties have not given their consent to the bankruptcy court's exercise of jurisdiction. The likelihood of a second jury trial in the district court is great. The waste of time and resources in having the bankruptcy court conduct its own jury trial in such circumstances is obvious.

60 B.R. 178, 182.

Other courts finding no authority in the bankruptcy court to conduct jury trials in this type of proceeding have noted that the procedure of § 157(c)(1) indicates that Congress did not intend bankruptcy judges to utilize jury trials under that section, since the requirement that the bankruptcy judge submit proposed findings of fact and conclusions of law is incompatible with a jury determination in the form of a verdict and would render the jury's verdict merely "advisory." See *In Re Michigan Real Estate Insurance Trust*, 87 B.R. 447 (E.D.Mich.

1988); *UNR Industries, Inc.; Pied Piper Casuals, Inc.* Moreover, it has been suggested that *de novo* review of the bankruptcy court's findings following a jury verdict might violate the Seventh Amendment prohibition against reexamination of facts tried by a jury. *See In re American Community Services, Inc.; UNR Industries, Inc.* Based upon the reasoning of these cases, this Court concludes that there should be no jury trial in the bankruptcy court in noncore proceedings where the parties have not consented to entry of final judgment under § 157(c)(2).[2]

Debtors' complaint here contains a statement of consent to entry of final judgment by the bankruptcy court. The Bank, however, has not so consented and, because of its objection to debtors' jury demand, presumably would not consent to entry of final judgment following a jury trial in this Court. The parties' lack of consent in this noncore proceeding makes trial in the bankruptcy court impractical and potentially violative of statutory and constitutional mandates.[3] Therefore, this Court is unable to afford debtors the jury trial to which they are entitled on their complaint, and trial of debtors' action against the Bank should be conducted in the district court.[4]

For the reasons stated, the Bank's objection to debtors' request for jury trial *in the Bankruptcy Court* is SUSTAINED.

IT IS SO ORDERED.

---

2. The parties have not raised nor has the Court addressed the issue of whether a debtor possessing a right to a jury trial on his claim waives that right by electing to sue in a forum which lacks statutory authority to conduct jury trials.

3. Due to the lack of consent in the instant case, it is unnecessary for this Court to determine whether § 157 authorizes bankruptcy courts to preside over jury trials in noncore proceedings where the parties have consented to entry of final judgment.

4. The Court's ruling leaves the debtors in the unusual posture of having a right to jury trial without a mechanism in the Bankruptcy Court to carry out such right. Therefore, debtors may wish to seek a withdrawal of reference by the District Court in this adversary proceeding pursuant to 28 U.S.C. § 157(d). *See In re Reda, Inc.; see also Acolyte Electric Corp. v. City of New York*, 69 B.R. 155 (Bankr.E.D.N.Y.1986).