VANCE, Circuit Judge:
 

 Chapes, Ltd. (“Chapes”) appeals the district court’s judgment affirming a bankruptcy court order. On May 23, 1981, William R. Scaife (“Scaife”) gave his wife’s engagement ring to Chapes as collateral for a $4000 loan. The loan contract with Chapes stated that the ring’s appraised value was $12,000, that the amount financed was $4,000, that the finance charge was $200, that a total payment of $4,200 was due on June 23, 1981, and that the annual percentage rate was “5% p/m/u/b.” Scaife did not pay the loan balance due on June 23, 1981. Chapes allowed Scaife to renew the loan for successive monthly periods through March 23, 1982, by paying interest at the rate of 5% per month. A new disclosure statement and note were not signed at the time of each renewal. In March of 1982, Chapes did not renew Scaife’s loan and gave Scaife written notice
 
 *359
 
 that the ring would be sold to satisfy the loan if not redeemed by April 28, 1982. On May 20, 1982, Chapes sold the ring to A. Speer Diamond Brokers for $4,200. Speer Diamond Brokers thereafter sold the ring for $7,000.
 

 Scaife filed a Chapter 7 petition in the United States Bankruptcy Court in Atlanta, Georgia, and Paul H. Anderson, Jr., was appointed trustee for the estate. Anderson filed an adversary proceeding against Chapes, Ltd. and Speer Diamond Brokers for (a) recovery of usurous interest paid, (b) damages for conversion of the ring, and (c) statutory damages and reasonable attorney’s fees for violation of the Truth in Lending Act. Chapes admitted that the finance charges paid by Scaife violated state law and that Chapes had violated the Truth in Lending Act. The bankruptcy court assessed damages in the amount of $3,600 and $3,850.16 in attorneys’ fees for violation of the Truth in Lending Act. The bankruptcy court also found Chapes liable for conversion in the amount of $7,000. The district court affirmed the bankruptcy court’s judgment. This appeal followed.
 

 I. Truth in Lending Act Violation.
 

 The Truth in Lending Act provides in pertinent part:
 

 any creditor who fails to comply with any requirement imposed under this part ... with respect to any person is liable to such person in an amount equal to the sum of—
 

 (1) any actual damage sustained by such person as a result of the failure;
 

 (2) (A)(i) in the case of an individual action, twice the amount of any finance charge in connection with the transaction ... except that the liability under this subparagraph shall not be less than $100 nor greater than $1,000; and
 

 (3) in the case of any successful action to enforce the foregoing liability ... the cost of the action, together with a reasonable attorney’s fee as determined by the court.
 

 15 U.S.C. § 1640(a). The bankruptcy court awarded statutory damages of $3,600, exactly twice the amount of the finance charge Chapes collected from Scaife. Chapes argues that this assessment of damages is erroneous, and that its total liability for violation of the Truth in Lending Act should have been limited to $1,000.
 
 [1]
 

 The issue before this court is whether each monthly renewal of the original loan constitutes a separate “transaction” within the meaning of 15 U.S.C. § 1640(a)(2). If so, then the damages awarded by the bankruptcy court of $400 for each of the nine renewals were within the $1,000 ceiling for each transaction. If the total of Scaife’s dealings with Chapes constituted only one “transaction,” the bankruptcy court was restricted to a maximum assessment of $1,000.
 

 Regulation Z as promulgated by the Federal Reserve System originally provided:
 

 (j)
 
 Refinancing, Consolidating
 
 or
 
 Increasing.
 
 If any existing extension of credit is refinanced, or two or more existing extensions of credit are consolidated, or an existing obligation is increased, such transaction shall be considered a new transaction subject to the disclosure requirement of this part.
 

 In 1981 Regulation Z was amended in pertinent part by the following new provision:
 

 (a)
 
 Refinancings.
 
 A refinancing occurs when an existing obligation that was subject to this subpart is satisfied and replaced by a new obligation undertaken by the same consumer. A refinancing is a new transaction requiring new disclosures to the consumer. The new finance charge shall include any other portion of the old finance charge that is not credited to the existing obligation.
 
 The following shall not be treated as a refinancing:
 

 (1) the renewal of a single payment obligation with no change in the original terms.
 

 12 C.F.R. § 226.20 (emphasis added).
 

 Although the revised regulation was published in April, 1981, it did not become
 
 *360
 
 mandatory until October 1, 1982. Since the loan or loans in question occurred between May of 1981 and March of 1982, two sets of regulations were in place during the entire period.
 

 It is not altogether clear whether Chapes contends that the revised regulation governs this case. In any event, this precise issue was decided in
 
 Cox v. First National Bank of Cincinnati,
 
 751 F.2d 815, 822 (6th Cir.1985). We agree with the Sixth Circuit’s holding:
 

 The provision concerning the effective date quoted above merely states that a “creditor may comply” with the amendments prior to their effective date and that “any creditor who elects to comply” will be subject to the amended provisions on liability. ... The notice accompanying the promulgation of Revised Regulation Z states that a “creditor may avail itself of the new tolerances only if it complies with the revised regulation.”
 

 Id.
 
 at 821-22. The court went on to hold that because the creditor did not comply with the provisions of the revised act and revised regulations, it could not invoke them prior to their effective date. Similarly, Chapes cannot invoke Revised Regulation Z to limit its liability to $1,000 because it was not in compliance with the requirement of Revised Regulation Z that the interest rate be stated as an annual percentage.
 

 The burden of Chapes’ argument is that a correct construction of
 
 former
 
 Regulation Z limits Chapes’ liability to $1,000. Citing
 
 Anderson Bros. Ford v. Valencia,
 
 452 U.S. 205, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981), Chapes argues that Revised Regulation Z, and the reasoning behind it, may be used in interpreting the requirements of the former law where the matter in issue was not specifically addressed in the pre-amendment Act or regulations. Revised Regulation Z excludes from its definition of “refinancing” a “renewal of single payment obligation with no change in the original terms.” While this language may have been intended as a clarification of former Regulation Z, it was promulgated pursuant to amendments to the Truth in Lending Act. Drafted under this mood of substantive change, Revised Regulation Z could just as easily have been intended as a substantive change from the former regulation.
 

 Case law interpretation of the preamendment Act and regulations strongly indicates that the provision in question was a substantive change from the former regulation and that the former regulation did not consider the renewal of a single payment obligation as a separate transaction. This court has noted that section 1640(g) does not apply to “a pawn contract which by its own terms could be
 
 renewed
 
 monthly by payment of interest.”
 
 Henson v. Columbus Bank and Trust Co.,
 
 651 F.2d 320 (5th Cir. Unit B 1981). Section 1640(g) reads as follows:
 

 The multiple failure to disclose to any person any information required ... to be disclosed in connection with a single account under an open end consumer credit plan, other single consumer credit sale, consumer loan, consumer lease, or other extension of consumer credit, shall entitle the person to a single recovery under this section but continued failure to disclose after a recovery has been granted shall give rise to rights to additional recoveries.
 

 In holding that the case before it did not involve separate transactions for purposes of the Truth in Lending Act, the
 
 Henson
 
 court distinguished the facts before it from those in
 
 Dennis v. Handley,
 
 453 F.Supp. 833 (N.D.Ala.1978):
 

 Even if
 
 Handley
 
 identifies a situation to which 15 U.S.C. § 1640(g) is inapplicable, Henson’s argument is untenable. His payment of interest differs in effect from the pawnor’s payment. If the paw-nor did not make the interest payment, under the terms of the pawn contract, the pawnee took title to the pledged property and the “loan” transaction was thereby concluded. By his payment of interest, however, the pawnor prevented the termination. In Henson’s situation, late payment does not conclude the loan. Thus each payment in
 
 Handley
 
 created a new loan, while each of Henson’s pay
 
 *361
 
 ments was merely part of a single loan transaction.
 

 Henson,
 
 651 F.2d at 329.
 
 Dennis v. Handley,
 
 which specifically interpreted the language in question in former Regulation Z, held that each monthly renewal of credit by a pawn broker was a separate transaction. Chapes’ attempts to distinguish the
 
 Hand-ley
 
 case by noting that in the present case, the transaction in question could not “by its own terms ... be renewed monthly by payment of interest.” The fact that in
 
 Dennis
 
 the loan agreement expressly provided for monthly renewal would, if anything, suggest that the renewal in that case was part of the original transaction rather than a separate transaction. Despite this feature, the court in
 
 Dennis
 
 held that each renewal was a separate transaction. Far from dissuading us, the fact that the loan in question did not expressly provide for renewal in the original document reinforces our conclusion that each renewal was a separate transaction.
 

 Since each renewal was a separate transaction, the bankruptcy court was required to assess damages in the amount of at least twice the finance charge for each transaction, to a maximum of $1,000. The bankruptcy court correctly assessed $3,600, which is exactly $400 per transaction, twice the finance charge assessed by Chapes in each transaction.
 

 II. Attorney's Fees.
 

 Chapes argues that if this court reduces the statutory damages assessed by the bankruptcy court, it should likewise reduce attorneys’ fees awarded as most of the fees awarded were for work on the damages issues. Because we have concluded that the bankruptcy court was correct in its assessment of damages, Chapes’ attorneys’ fees argument also fails. The amount of the attorneys’ fees are within the discretion of the district court.
 
 Henson v. Columbus Bank & Trust Co.,
 
 651 F.2d 320, 329 (5th Cir.1981).
 

 III. Conversion.
 

 Chapes argues that the district court erroneously concluded that Chapes was liable in conversion for Mrs. Scaife’s ring. Chapes notes that the bankruptcy court specifically found as a matter of fact that the ring was owned by Mrs. Scaife, and not by the debtor William R. Scaife. Chapes asserts that William Scaife’s right of possession, alone, does not give his bankruptcy estate standing to sue for conversion. Alternatively, Chapes argues that any damages awarded in a conversion action by the trustee is limited to William Scaife’s pos-sessory interest in the ring, not the full value of the ring.
 

 With respect to the first argument, Chapes cites
 
 Zugar v. Glen Falls Indem. Co.,
 
 63 Ga.App. 660, 11 S.E.2d 839 (1940), for the proposition that “where mere possession will give a right of action for any interference therewith, such possession must be in one’s own right and not as agent of another.” Chapes maintains that the trustee is not Mrs. Scaife’s agent, and cannot sue as William Scaife’s agent because Scaife merely had a right of possession. The bankruptcy trustee does not, however, sue as agent of the debtor, rather the trustee sues as the debtor’s successor in interest.
 
 See
 
 11 U.S.C. § 541. Thus Chapes’ first argument is meritless.
 

 Chapes’ second argument is more troubling. There appears to be conflicting authority in Georgia as to whether one with only a possessory interest may sue in conversion to recover the full value of the chattel or merely for the damage to the possessory interest. In
 
 Zugar v. Glen Falls Indem. Co.,
 
 the court noted that one with possession can recover the property itself or the damage to the special interest therein.
 

 While in an ordinary trover action brought by the owner of the entire interest in the property the plaintiff may recover in an alternative verdict the highest proved value ..., but where he has no title but only a special interest in the property, and elects to take a money verdict, the measure of damage is the value of that interest.
 

 11 S.E.2d at 841. On the other hand, in
 
 Smith v. R.F. Brodegaard & Co.,
 
 77 Ga. App. 661, 49 S.E.2d 500 (1948), the court quoted:
 

 It is undoubtedly true that one having a right of possession may sue a stranger
 
 *362
 
 or mere wrong-doer in trover, and recover the full value of the property, though his right of possession rests on only a qualified title.
 

 Id.
 
 at 666, 49 S.E.2d at 504 (quoting
 
 Atlantic Coast Line Railroad v. W W. Gordon & Co.,
 
 10 Ga.App. 311, 314, 73 S.E. 594, 595 (1912).
 

 We believe the latter case states the better and more widely accepted rule.
 

 The early law ... permitted the man in possession to recover the full value of the chattel, although he did not own it, and might be responsible over to some one else who did....
 

 ... The original justification for this lay in the convenience of treating the possessor as the owner, and the encouragement of peace and security expected to result from the protection of any possession against a wrongdoer with no rights at all. Modem law has discovered new reasons of business convenience for permitting the possessor to maintain the action, and recover the full value of the chattel. It is said that the possession is sufficient title against the wrongdoer, because the man in possession is, of the two, the proper party to account to the true owner for the amount recovered, and to adjust with him any question as to their respective rights.
 

 W. Prosser, The Law of Torts § 15, at 94-95 (4th ed. 1981). The district court correctly awarded the trustee damages in the amount of the full value of the ring.
 

 IV. Setoff.
 

 Chapes argues that the lower court erred in failing to grant a setoff of $4,000, the unpaid principal amount of the loan, against either the Truth-in-Lending damages or the conversion damages.
 

 Chapes failed to include the claimed setoff in its answer. The setoff claim appeared for the first time in its pre-trial order in the outline of Chapes’ case. Chapes never sought leave, pursuant to Federal Rule of Civil Procedure 15, to amend its answer, nor did it argue the setoff issue before the bankruptcy court or in its post-trial brief. Chapes now asserts that its failure to claim the setoff in the pleadings did not bar its claim because the pre-trial order supersedes the pleadings. Chapes relies on
 
 Management Investors v. United Mine Workers,
 
 610 F.2d 384, 390 n. 17 (6th Cir.1979), for its contention.
 

 The
 
 Management Investors
 
 case dealt with a
 
 defense
 
 which was omitted in the pleadings but included in the pre-trial order. The claimed setoff against the Truth-in-Lending damages was a compulsory counterclaim.
 
 Plant v. Blazer Financial Serv.,
 
 598 F.2d 1357 (5th Cir.1979). The setoff against the conversion damages is also a counterclaim, not a defense.
 
 Swim Dixie Pool Corp. v. Kraemer,
 
 157 Ga.App. 748, 749, 278 S.E.2d 448, 449 (1981);
 
 Gwinnett Commercial Bank v. Flake,
 
 151 Ga. App. 578, 260 S.E.2d 523 (1979);
 
 see
 
 Fed.R. Civ.P. 13(a). In addition, Chapes did not actively litigate the setoff issue before the bankruptcy court. Under these circumstances to address the merits of Chapes’ claim would in effect allow it to raise a claim that it elected not to pursue in the lower court. We will not address the merits of Chapes’ setoff claim because it was not properly raised and litigated in the bankruptcy court and was not addressed by that court.
 

 AFFIRMED.
 

 [1]
 

 . Chapes' briefs actually state that "Chapes is liable only for the maximum statutory penalty of $100.” This court assumes, as did the appel-lee, that this figure is a typographical error since the maximum statutory penalty is $1,000.