**MARK VII FINANCIAL CONSULTANTS CORPORATION, Plaintiff and Appellant,**

v.

**Dale SMEDLEY and The First National Bank of Layton, Defendants and Appellees.**

**No. 880606–CA.**

Court of Appeals of Utah.

April 30, 1990.

Jackson Howard (argued), D. David Lambert, Leslie W. Slaugh, Howard, Lewis & Petersen, Provo, for plaintiff and appellant.

William Thomas Thurman, Scott C. Pierce (argued), McKay, Burton & Thurman, Salt Lake City, for Dale Smedley.

David E. Bean (argued), Bean & Smedley, Layton, for First Nat. Bank of Layton.

Before BENCH, GREENWOOD and LARSON[1], JJ.

## OPINION

BENCH, Judge:

Plaintiff appeals a jury verdict awarding it damages for breach of contract and conversion. We affirm, but modify the judgment against defendant The First National Bank of Layton (Bank).

Prior to this dispute, defendant Dale Smedley owned approximately 200 acres of land in Morgan County, Utah. The land was mortgaged to the General Electric Credit Corporation (GECC) in the amount of $112,500. In June 1984, Smedley entered into a joint venture with plaintiff Mark VII Financial Consultants Corporation to develop the property. Plaintiff agreed to pay $100,000 cash to GECC on the existing mortgage and to execute a promissory note to GECC for the balance due. The note was secured by Smedley's truck-mounted, well-drilling rig and his personal guaranty. Smedley executed a bill of sale for the drill rig, conveying title to plaintiff. The joint venture contract further provided that Smedley had the right to reacquire title to the drill rig by performing $65,000 worth of work on the development property.

Smedley retained possession of the drill rig, but ultimately could not complete work on the property because of foreclosure proceedings initiated by plaintiff's creditor. When the GECC promissory note became due, plaintiff refused to make payment on the note until Smedley delivered possession of the drill rig. Smedley declined to do so, allegedly because plaintiff would not recognize that Smedley had earned equity in the rig by virtue of his work on the development property. GECC then gave notice of foreclosure on the drill rig.

Smedley, concerned about losing his equity in the rig by the threatened foreclosure, approached the Bank, to whom he owed a considerable debt, and arranged to have

1. John Farr Larson, Senior Juvenile Court Judge, sitting by special appointment pursuant to Utah Code Ann. § 78–3–24(10) (Supp.1989).

the Bank purchase from GECC the promissory note, chattel mortgage, and guaranty agreement. Smedley allegedly intended to apply his equity in the drill rig to his indebtedness at the Bank. The Bank did as Smedley requested, and sent notice to plaintiff that the Bank intended to sell the drill rig. Although plaintiff offered, in writing, to pay the amount of principal and interest on the promissory note, the offer did not include payment. *See, e.g., Carr v. Enoch Smith Co.,* 781 P.2d 1292, 1294 (Utah Ct.App.1989) ("tender" requires an unconditional offer of payment along with the actual production of money or its equivalent). On the advice of counsel, the Bank did not respond to the offer. The sale was held and Smedley paid the amount demanded.

Smedley thereafter sold the drill rig to a third party and paid a portion of the sale proceeds to the Bank; plaintiff filed this action for breach of contract and conversion.

The district court granted plaintiff partial summary judgment, ruling that Smedley had redeemed the drill rig as a secured party and that his acquisition of the rig had not destroyed plaintiff's ownership interest. The case proceeded to trial in March and April, 1988. On the breach of contract cause of action against Smedley, the jury determined that Smedley owed plaintiff $65,000 under the joint venture contract, less setoffs, for: (1) work Smedley performed on the development property ($20,139), and (2) the amount Smedley paid the Bank on the note ($14,275). The net award against Smedley on the contract claim was therefore $30,586. This portion of the judgment has not been challenged on appeal.

On the conversion claim against Smedley and the Bank, the jury awarded plaintiff $35,000, which was the stipulated fair market value of the drill rig, less the same setoffs allowed on the contract claim. The net award against Smedley and the Bank on the conversion claim was therefore $586, with the Bank receiving the full benefit of the setoffs. The district court later added $250 to each judgment in response to plaintiff's post-trial motions.

Plaintiff now contends that it was error to permit the setoffs against the Bank's liability, since the setoffs represented an obligation plaintiff owed to Smedley alone. The setoffs were not only contrary to the jury instructions, plaintiff argues, but also lacked the mutuality of obligation between the parties required by case law. Plaintiff further argues that it was entitled to a jury instruction on punitive damages.

 A "setoff" is a counterclaim which a defendant may have against a plaintiff to be used in full or partial satisfaction of whatever is owed. *Studley v. Boylston Nat'l Bank,* 229 U.S. 523, 528, 33 S.Ct. 806, 808, 57 L.Ed. 1313 (1913). Unlike "recoupment," in which a defendant receives a rebate on plaintiff's claim arising from the same transaction, setoff refers to an unrelated transaction. *See* 6 C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 1401 (2d ed. 1990). Some jurisdictions, in furtherance of this distinction, do not permit the pleading of setoffs in suits for tortious or wrongful conversion. *See, e.g., Neff v. Ford Motor Credit Co.,* 347 So.2d 1228, 1232 (La.Ct.App.1977).

The distinction between recoupment and setoff has largely been abandoned by the "counterclaim," which essentially encompasses both recoupment and setoff. 20 Am.Jur.2d *Counterclaim, Recoupment, and Setoff* §§ 3, 10 (1965). Under the Federal Rules of Civil Procedure, courts have "broad discretion to allow claims to be joined in order to expedite the resolution of all controversies between the parties in one suit." 6 C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 1403 (2d ed. 1990). Thus, any claim that a defendant has against a plaintiff may be pleaded as a counterclaim. *Id.* If the counterclaim arises from the same transaction as plaintiff's claim, then the defendant must plead it as a compulsory counterclaim under rule 13(a) or waive the right to recover on it. *Id.* If, however, the counterclaim is independent of plaintiff's claim, then it may be asserted in either a separate action or as a permissive counterclaim under rule

13(b). *Id.* In short, the federal rules "remove the past restrictions on unrelated counterclaims" and "allow the broadest possible joinder of permissive counterclaims." *Id.* at § 1420. A defendant may therefore "assert a tort counterclaim in a contract action, or a contract counterclaim in a tort action." 3 J.W. Moore, *Moore's Federal Practice* § 13.02 (2d ed. 1989).

Since the Utah Rules of Civil Procedure were modeled after the federal rules, *see Heritage Bank & Trust v. Landon*, 770 P.2d 1009, 1010 n. 2 (Utah Ct.App.1989), we conclude that the distinctions between recoupment, setoff, and counterclaim have likewise been dissolved in Utah. The pleading of such claims now having been relaxed, Smedley could properly plead setoffs against both the claim for breach of contract and the claim for conversion.[2]

■ Plaintiff argues, however, that it was error to permit the setoffs to the Bank's liability, since the setoffs represented an obligation plaintiff owed to Smedley alone. We agree. Without determining whether the setoffs were contrary to the jury instructions, we simply hold that plaintiff and the Bank lacked the mutuality of obligation required for the pleading of a setoff.

As a general rule, in order to warrant a set-off the demands must be mutual and subsisting between the same parties.... In order to be mutual the cross demands set up ordinarily must be shown to belong individually to defendant, with a corresponding right to sue for them in his individual name, and defendant, as a general rule, cannot set off a demand on which he is not entitled to sue in his own name....

80 C.J.S. *Set-off and Counterclaim* § 48a(2) (1953); *see also* 20 Am.Jur.2d *Counterclaim, Recoupment, and Setoff* § 74 (1965). The requirement that setoff must rest upon a mutuality of obligation was cited with approval in *First Sec. Bank v. Utah Turkey Growers, Inc.*, 610 P.2d 329, 333 (Utah 1980), and we therefore apply it in this case.

Plaintiff alleged a civil conspiracy between Smedley and the Bank to convert its interest in property. Smedley asserted as setoffs the value of the work he performed on the development property and the money he paid the Bank on the note. The Bank, however, was entitled to neither of these setoffs. The Bank was neither a party to, nor was owed any obligation under, the contract between plaintiff and Smedley. The money that Smedley paid the Bank at the foreclosure sale of the drill rig was to reimburse the Bank for its acquisition of the note from GECC. Since it was an obligation owed originally to GECC, and not to plaintiff, the Bank was not entitled to a setoff for its payment. Lacking the mutuality of obligation with plaintiff, the Bank could not take advantage of the setoffs rightfully asserted by Smedley.[3] Accordingly, we modify the award of damages against the Bank for conversion of plaintiff's interest in the drill rig, omitting the benefit of Smedley's setoffs.

■ Plaintiff also urges that the jury should have had the opportunity of awarding punitive damages. Punitive damages "serve a societal interest of punishing and deterring outrageous and malicious conduct which is not likely to be deterred by other means." *Amica Mut. Ins. Co. v. Schettler*, 768 P.2d 950, 967 (Utah Ct.App.

**2.** Although Smedley apparently pleaded the setoffs as a defense and not as a counterclaim seeking affirmative relief, the distinction is not critical. Professor Moore notes:

At common law[,] matter[s] in recoupment or set-off could be used defensively, but not for the purpose of obtaining an affirmative recovery.... Under Rule 13, recoupment affords the basis for a compulsory counterclaim; and set-off for a permissive counterclaim, and normally should be pleaded as such.... At times, though, a defendant may desire to use recoupment or set-off defensively, rather than

as the basis of a counterclaim seeking affirmative relief, and he may properly do so.
J.W. Moore, *Moore's Federal Practice* § 8:27[3] (2d ed. 1989) (footnotes omitted).

**3.** The Bank cites no authority for its contention that a finding of conspiracy supplies the necessary mutuality of obligation. At least one jurisdiction bars setoffs in conversion actions under the theory that setoff is an equitable remedy not to be extended to "wrongdoers." *Tolbird v. Cooper,* 136 So.2d 83, 86 (La.Ct.App.1961).

1989) (quoting *Atkin Wright & Miles v. Mountain States Tel. & Tel.*, 709 P.2d 330, 337 (Utah 1985)). In non-false imprisonment cases, punitive damages "may be imposed for conduct that is willful and malicious or that manifests a knowing and reckless indifference and disregard toward the rights of others." *Johnson v. Rogers*, 763 P.2d 771, 774 (Utah 1988); *cf. Miskin v. Carter*, 761 P.2d 1378, 1379 (Utah 1988) (the legal standard for awarding punitive damages in tort cases appears to be somewhat in conflict). This standard is "fact-specific," *Johnson*, 763 P.2d at 776, such that the determination as to whether punitive damages are awarded is "within the sound discretion and province of the jury." *Biswell v. Duncan*, 742 P.2d 80, 86 (Utah Ct.App.1987). The issue may be withheld from the jury, however, if there is no evidence to justify punitive damages. *Gleave v. Denver & Rio Grande W.R.R.*, 749 P.2d 660, 670 (Utah Ct.App.1988). Where, as it appears here, punitive damages are denied by a directed verdict, we do not affirm that verdict if reasonable inferences supporting judgment for the losing party can be drawn from the evidence. *Gleave*, 749 P.2d at 670.

 It is unclear why the trial court refused to instruct the jury on the issue of punitive damages. Plaintiff was successful on its conversion claim, and based on the instructions, the jury necessarily found conspiracy between the defendants by finding the Bank liable for conversion.[4] However, we have no transcript before us, and without that evidence, we cannot determine if there are reasonable inferences that would support an award of punitive damages. *Cf. Amica*, 768 P.2d at 966 (record replete with egregious and intolerable conduct). "The burden is on the parties to make certain that the record they compile will adequately preserve their arguments for review in the event of an appeal." *Franklin Fin. v. New Empire Dev. Co.*, 659 P.2d 1040, 1045 (Utah 1983). Absent the trial transcript, the claim of error is merely an unsupported, unilateral allega-

tion which we cannot resolve. *See Call v. City of West Jordan*, 129 Utah Adv.Rep. 38, 40 (Ct.App.1990). We therefore affirm the trial court's refusal to submit the issue of punitive damages to the jury.

In conclusion, we affirm the judgment against Smedley, but modify the judgment against the Bank to omit the benefit of Smedley's setoffs. Each party will bear its own costs.

GREENWOOD and LARSON, JJ., concur.

---

4. We note that it may be necessary to show more than a mere conspiracy to convert property since "[a] wrongful act is not in and of itself a sufficient basis to award punitive damages." *Amoss v. Broadbent*, 30 Utah 2d 165, 168, 514 P.2d 1284, 1287 (1973).