In re CONCEPT CLUBS, INC., Mulboons, Inc., Bojo, Inc., Allen Hospitality, Inc., Mulboons of Ogden, Inc., Debtors.

Harriet E. STYLER, Trustee of the above-named debtors, Plaintiff,

v.

JEAN BOB INCORPORATED, dba Studebaker's, a Utah non-profit corporation; First Security Bank of Utah; Utah Department of Alcohol and Beverage Control; Brentley A. Mahaffey; Dale R. Pascoe; and Al Potvien, Defendants.

Bankruptcy Nos. 89A–02750
to 89A–02754.
Adv. No. 92PA–2213.
No. 93–C–8A.

United States District Court,
D. Utah C.D.

May 10, 1993.

See also 125 B.R. 634.

Kim R. Wilson, Snow, Christensen & Martineau, Salt Lake City, UT, for defendants.

Steven G. Loosle, Kruse, Landa & Maycock, Salt Lake City, UT, for plaintiff.

ALDON J. ANDERSON, Senior District Judge.

## I. Introduction

This matter is before the court on a Motion to Withdraw the Reference pursuant to 28 U.S.C. § 157(d) (1988). Jean Bob Incorporated ("Jean Bob"), a Utah Corporation, requests this court to withdraw the reference from the bankruptcy court regarding an adversary proceeding between Jean Bob and the debtors' Chapter 7 trustee. The trustee filed the adversary proceeding against Jean Bob for "breach of contract" and "turnover of funds pursuant to 11 U.S.C. § 542(a)." Jean Bob contends that it is entitled to a jury trial on all of the issues raised in the trustee's adversary complaint. After listening to the arguments of counsel and examining the applicable law, the court issues the following Memorandum Decision and Order.

## II. Facts

Each of the debtors in this consolidated case filed a petition under Chapter 11 of the United States Bankruptcy Code ("Bankruptcy Code") on May 4, 1989. One of the debtors, Concept Clubs Inc., operated a pri-

vate club, known as "Studebaker's," in Salt Lake City that was owned by Jean Bob. Jean Bob utilized Concept Clubs' services through a management agreement.

During Concept Clubs' Chapter 11 reorganization, it was required to obtain a $10,-000.00 bond from the Utah Department of Alcoholic Beverage Control to continue operating Studebaker's. Concept Clubs purchased the bond through Dale R. Pascoe ("Pascoe"), who had been employed as an accountant by the court-appointed examiner to assist in Concept Clubs' cash management. Pascoe purchased the bond in the form of a $10,000.00 certificate of deposit; his signature was required to release the deposited amount. On December 21, 1990, Concept Clubs' reorganization case was converted to a liquidation under Chapter 7. Harriet E. Styler (the "Trustee") was appointed as the Chapter 7 trustee.

The Trustee filed this adversary proceeding against Jean Bob on November 2, 1992. The Trustee sought to recover damages against Jean Bob for breach of the management agreement and turnover of the funds placed in the certificate of deposit. In response, Jean Bob alleged, inter alia, that it is entitled to an offset for (1) the Chapter 11 trustee's violations of the management agreement, and (2) revenues and property allegedly converted by the Chapter 11 trustee that belonged to Jean Bob. Jean Bob filed this setoff in the form of an Answer to the Trustee's First Amended Complaint.

Immediately thereafter, in compliance with Local Rules 405 and 406, Jean Bob filed a jury demand and a denial of consent to the bankruptcy court's jurisdiction to enter a final order with the bankruptcy court. Jean Bob also filed an Application for an Order Directing Transmittal of Motion to the United States District Court in compliance with Local Rule 405(f). Finally, Jean Bob submitted a motion with the bankruptcy court to determine whether this adversary proceeding required the determination of "core" or "non-core" matters under 28 U.S.C. section 157(b)(3).

It is undisputed, however, that the bankruptcy court has not yet determined whether this dispute presents a "core" matter. Therefore, the facts before this court present two issues. First, as a procedural matter, is this court required to await the bankruptcy court's decision under section 157(b)(3) prior to considering the motion to withdraw the reference? Second, did Jean Bob waive its Seventh Amendment right to a jury trial by asserting setoff as an affirmative defense in its Answer to the Trustee's Adversary Complaint?

### III. Legal Discussion

■ In considering whether to withdraw the reference pursuant to 28 U.S.C. section 157(d), this court *may* withdraw the reference if it determines that "cause exists, within the contemplation of section 157(d)." D.Utah R. 405(a)(3); 28 U.S.C. § 157(d) (1988). This is referred to as "discretionary" or "permissive" withdrawal. *American Comm. Servs., Inc. v. Wright Marketing (In re American Comm. Servs., Inc.),* 86 B.R. 681, 686 (D.Utah 1988); *Hatzel & Buehler v. Central Hudson Gas & Elec.,* 106 B.R. 367, 370 (D.Del.1989). Under the discretionary standard, the party seeking to have the reference withdrawn bears the burden of showing "cause." *Hatzel,* 106 B.R. at 370. By contrast, this court *must* withdraw the reference if the "resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." D.Utah R. 405(a)(2); 28 U.S.C. § 157(d) (1988). As the language of the statute suggests, this refers to "mandatory withdrawal" where the court must withdraw the reference. *Hatzel,* 106 B.R. at 370.

Determining whether "cause" has been satisfied for permissive withdrawal presents a difficult issue because the language of 28 U.S.C. section 157(d) lacks any specific examples of what might constitute "cause." *In re American Comm. Servs., Inc.,* 86 B.R. at 686. In an attempt to add some substance to the term "cause," the *American Community Services* court suggested that "permissive withdrawal of the reference is generally appropriate when the interest of judicial economy would be served or when a party has a right to a

584

jury trial." *Id.* (footnote omitted). For example, with respect to the jury trial criterion, the *American Community Services* court concluded that it would be appropriate to withdraw the reference when the movant (1) refused to consent to the bankruptcy court's final judgment on the issue; (2) timely requested a jury trial, and (3) possessed a Seventh Amendment right to a jury trial. *Id.* In the present case, the movant, Jean Bob, has satisfied the first two prongs of this analysis. Jean Bob requested a jury trial and refused to consent to a final judgment on the adversary proceeding by the bankruptcy court. Prior to reaching the final element, however, this court must address a threshold procedural matter not raised by the parties.

*A. 28 U.S.C. § 157(b)(3): Determination of Core or Non–Core Status*

■ In the Bankruptcy Amendments and Federal Judgeship Act of 1984, Congress restructured the jurisdiction of the United States Bankruptcy Courts. As part of the amended statutory scheme, a bankruptcy judge is required to determine "whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11." 28 U.S.C. § 157(b)(3) (1988). Likewise, Local Rule of Practice 406 echoes section 157(b)(3) by requiring the bankruptcy judge to make the core/non-core determination in compliance with section 157(b)(3). D.Utah R. 406. The bankruptcy court's conclusions under section 157(b)(3) directly affect that court's jurisdiction over the matters before it. *See* 28 U.S.C. § 157(b)(1), (c)(1) (1988). In the present case, the parties submitted a motion requesting the bankruptcy judge to make such a determination, but the bankruptcy court has not yet ruled on the motion.

■ It is apparent from section 157(b)(3)'s language that it is the bankruptcy judge's province to determine whether a proceeding is core or non-core. *Hatzel,* 106 B.R. at 370; *Kaiser Steel Corp. v. Frates (In re Kaiser Steel Corp.),* 95 B.R. 782, 786 (Bankr.D.Colo.), *aff'd,* 109 B.R. 968 (D.Colo.1989), *rev'd on other grounds,* 911 F.2d 380 (10th Cir.1990); *Carr v. Michigan*

*Real Estate Ins. Trust (In re Michigan Real Estate Ins. Trust),* 87 B.R. 447, 452 (E.D.Mich.1989). The bankruptcy court's determination is important because, in reviewing a motion to withdraw the reference for cause, a district court may consider whether the matter is core, or non-core. *See Eastern Elec. Sales Co. v. General Elec. Co.,* 94 B.R. 348, 349 (E.D.Pa.1989); *Acolyte Elec. Corp. v. City of New York,* 69 B.R. 155, 165–66 (Bankr.E.D.N.Y.1986). The bankruptcy court's decision regarding the nature of the proceeding directly implicates the judicial resources which will be expended to resolve the dispute.

Some courts have found that section 157(b)(3) presents a procedural bar to withdrawal of the reference if the bankruptcy court has not ruled upon the core, or non-core, nature of the proceeding. *Hatzel,* 106 B.R. at 370 (citation omitted). The *Hatzel* court noted that "whether [a] proceeding is core or non-core is a determination which may be appropriately made, in the first instance, by the bankruptcy court, not the district court." *Id.* at 369–70. The district court refused to consider the motion to withdraw the reference without the bankruptcy court's determination of the issue. *Id.* at 370. The court stated that, to do otherwise, would circumvent the requirements of section 157(b)(3). *Id.* (citation omitted); *but see Pollner v. Connecticut Bank and Trust Co. (In re Harbor Park Assoc. Ltd. Partnership),* 112 B.R. 555, 557 (S.D.N.Y.1990) (finding that if the bankruptcy court has not determined whether a matter is core or non-core, the district court is empowered to make such a finding). The question before this court is whether it should await the bankruptcy court's decision under section 157(b)(3) before ruling on Jean Bob's Motion to Withdraw the Reference based upon Jean Bob's right to a jury trial.

This issue presents a question of first impression in the Tenth Circuit following *Kaiser Steel Corp. v. Frates (In re Kaiser Steel Corp.),* 911 F.2d 380 (10th Cir.1990). The *In re Kaiser Steel Corp.* court specifically held that "[w]here the seventh amendment requires a jury trial to be held in

bankruptcy, the trial *must* take place in the district court, sitting in its original jurisdiction in bankruptcy." *Id.* at 392 (emphasis added). This holding disagreed with the Second Circuit's contention that bankruptcy courts possessed the authority to conduct jury trials in core proceedings. *Id.* at 390 (citing *Ben Cooper, Inc. v. Insurance Company of State of Pa. (In re Ben Cooper, Inc.)*, 896 F.2d 1394 (2d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991)). Specifically, the Tenth Circuit rejected the Second Circuit's view that the bankruptcy court's power to issue final orders in core matters necessarily included the power to conduct jury trials. *Id.* at 391. In short, regardless of whether the matter is core, or non-core, the district court must conduct the jury trial if it is required by the Seventh Amendment.

With respect to the case at hand, this court must ascertain whether the bankruptcy court's determination that the adversary proceeding is core, or non-core, is a prerequisite to the court's consideration of whether the reference should be withdrawn. The court believes that it is not. In simple terms, the bankruptcy court's conclusions regarding the nature of the proceeding are irrelevant if the motion to withdraw the reference is based upon the movant's Seventh Amendment right to a jury trial.[1] Regardless of the bankruptcy court's determination under section 157(b)(3), the *In re Kaiser Steel* decision denies it the authority to retain jurisdiction if the movant has a right to a jury trial. Because the bankruptcy court cannot retain the matter, this court need not consider the effect withdrawal of the reference will have upon judicial economy. Thus, the bankruptcy court's finding under section 157(b)(3) is unnecessary for this court to determine whether it may withdraw the reference for cause.[2] Consequently, this court must consider whether Jean Bob has a right to a jury trial for the claim filed by the Trustee.

### B. The Seventh Amendment Right to a Jury Trial

■ The Trustee argues that Jean Bob is not entitled to a jury trial because Jean Bob waived that right by filing an affirmative defense of "setoff" in its Answer. *See* Mem. in Opp'n to Mot. to Withdraw the Reference at 5–7. In effect, the Trustee argues that a claim for setoff is a counterclaim which, like a formal proof of claim, seeks affirmative relief against the estate. *Id.* The Trustee maintains that, under the reasoning expressed in *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), such a claim waives the right to a jury trial and subjects Jean Bob to the jurisdiction of the bankruptcy court. *Id.* at 4. In response, Jean Bob contends that setoff is an affirmative defense which seeks only to reduce, or offset, the amount sought by the Trustee in the adversary proceeding. *See* Reply Mem. to Pl's Mem. in Opp. to Mot. to Withdraw the Reference at 4–7. This court must decide, therefore, whether a setoff raised as an affirmative defense waives the Seventh Amendment right to a jury trial.

### 1. Nature of a Setoff Claim

The Tenth Circuit has considered the nature of a claim for setoff under Bankruptcy Code section 553(a). *Davidovich v. Welton (In re Davidovich),* 901 F.2d 1533 (10th Cir.1990); *Turner v. United States (In re G.S. Omni Corp.),* 835 F.2d 1317 (10th Cir.1987); *Ashland Petroleum Co. v. Appel (In re B & L Oil Co.),* 782 F.2d 155 (10th Cir.1986). In *Davidovich,* the debtor, an attorney, commenced an action against his former partner to recover an amount awarded to him in arbitration. *Id.* at 1535. In response, the former partner sought to offset amounts awarded to him during arbitration against the debtor. *Id.* Addressing the term "setoff," the court stated that "[t]he common law doctrine of setoff, as recognized in section 553 of the Bankrupt-

---

1. This decision does not address the requirements of section 157(b)(3) in relation to withdraw the reference on any grounds other than the movant's right to a jury trial.

2. In a sense, because the Tenth Circuit has denied bankruptcy courts the authority to conduct jury trials, this form of "permissive" withdrawal will always be mandatory if the movant satisfies the prerequisites of his or her right to a jury trial.

cy Code, grants a creditor the right 'to offset a mutual debt owing by such creditor to the debtor' so long as both debts arose before the commencement of the bankruptcy action and are indeed mutual." *Id.* at 1537 (citations omitted). The court added that the mutuality element requires that the debts occur between the· same parties standing in the same capacity. *Id.* Further, each debt must be valid and enforceable. *Id.* Importantly, however, the mutual debt need not arise from the same transaction for the doctrine of setoff to apply. *Id.* The court permitted the former partner to setoff those amounts awarded to him through the arbitration procedures. *Id.; see also Tradex, Inc. v. United States (In re IML Freight, Inc.),* 65 B.R. 788, 793 (Bankr.D.Utah 1986) (setting forth elements for setoff claim).

■ It is important to note, however, that state law governs the substance of the setoff claim under Bankruptcy Code section 553. *See Durham v. SMI Indus. Corp.,* 882 F.2d 881, 883 (4th Cir.1989); *Express Freight Lines, Inc. v. Kelly (In re Express Freight Lines, Inc.),* 130 B.R. 288, 290 (Bankr.E.D.Wis.1991); *Williams v. American Bank of Mid–Cities (In re Williams),* 61 B.R. 567, 571 (Bankr. N.D.Tex.1986). This court, therefore, must look to Utah law to ascertain the nature of a setoff claim.

■ In Utah, the substantive distinctions between recoupment and setoff articulated at common law remain in place. *Mark VII Fin. Consultants v. Smedley,* 792 P.2d 130, 133 (Utah Ct.App.1990) (cit-

ing *First Sec. Bank v. Utah Turkey Growers, Inc.,* 610 P.2d 329, 333 (Utah 1980)). At common law, a setoff, as distinguished from a recoupment[3] or counterclaim[4], arose from different transactions, or occurrences, between the same parties. *See* Lawrence P. King, 4 *Collier on Bankruptcy* ¶ 553.03, at 553–14 (15th ed. 1993). It was often asserted to reduce or extinguish the creditor's claim against the debtor. *Id.* It was also used, however, to recover a judgment if the amount sought to be setoff exceeded the original claim. *Id.* at 553–15. In other words, a setoff provided the basis for affirmative relief. *Id.* As a procedural matter, a setoff claim provided the claimant with an independent cause of action which was offset against a separate existing claim in ·a single action for the purpose of judicial economy.

■ The procedural differences, however, between counterclaim, recoupment and setoff have been significantly relaxed under the modern rules of civil procedure. *Mark VII Fin. Consultants,* 792 P.2d at 133; *see also In re B & L Oil Co.,* 782 F.2d at 157 (reaching similar conclusion under Federal Rules of Civil Procedure).[5] Specifically, "a defendant may [choose to] ... use ... set-off defensively, rather than as the basis of a counterclaim seeking affirmative relief, and it may properly. do so." *Mark VII Fin. Consultants,* 792 P.2d at 133 n. 2 (citing 2A James Wm. Moore, *Moore's Federal Practice* ¶ 8.27[3], at 8–177 (2d ed. 1993)). In short, a setoff may be properly raised as either an affirmative defense *or* a counterclaim.[6] *Id.* &

---

3. A "recoupment" is an offset based upon a claim for relief "arising from the *same transaction* as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim. *See* Lawrence P. King, 4 *Collier on Bankruptcy* ¶ 553.03, at 553–15 (15th ed. 1993). Unlike a setoff, a recoupment lacks "the concept of mutuality of obligations and arises out of a single transaction between creditor and debtor." *Sapir v. Blue Cross/Blue Shield (In re Yonkers Hamilton Sanitarium, Inc.),* 34 B.R. 385, 386 (S.D.N.Y.1983).

4. A counterclaim is a broader concept than setoff or recoupment. *See* Lawrence P. King, 4 *Collier on Bankruptcy* ¶ 553.03, at 553–17 (15th ed. 1993). Under Federal Rule of Civil Proce-

dure 13, a counterclaim may include a setoff, or recoupment, but it may also include independent claims which lack the characteristics of a setoff, such as mutuality of obligation.

5. The Trustee argues that a setoff should be treated only as a counterclaim, rather than an affirmative defense.

6. Other jurisdictions, however, continue to recognize separate pleading requirements for counterclaims, recoupments and setoffs. For example, some courts have determined that a setoff should be pleaded as an affirmative defense. *See Durham v. SMI Indus. Corp.,* 882 F.2d 881, 883 (4th Cir.1989); *Joseph V. Edsskuty & Assoc. v. Jacksonville Kraft Paper Co.,* 702 F.Supp. 741,

n. 2. Additionally, if it is pleaded as a counterclaim, setoff provides the basis for a permissive counterclaim because setoff, by definition, does not arise from the same transaction as the original claim.[7] *Id.* at 132–33 & n. 2.

### 2. The Right to a Jury Trial in Bankruptcy

The Seventh Amendment provides: "In suits at common law, where the value of the controversy shall exceed twenty dollars, the right of trial by jury shall be preserved...." U.S. Const. amend VII. To determine if a party is entitled to a jury trial, the United States Supreme Court has developed an historical analysis that inquires whether the party would be entitled to a jury trial at common law in eighteenth century England. *Tull v. United States,* 481 U.S. 412, 417, 107 S.Ct. 1831, 1831, 95 L.Ed.2d 365 (1987) (citations omitted). In addition, a court must "examine the remedy sought and determine whether it is legal or equitable in nature." *Id.* at 417–18, 107 S.Ct. at 1831–36. Upon considering the two factors, a court may determine if the right to a jury trial exists under the Seventh Amendment. If such a right exists, it must be determined whether the particular claim constitutes a "public" or "private" right to assess the propriety of assigning adjudication "to a non-Article III adjudicative body that does not use a jury as a factfinder." *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 42, 109 S.Ct. 2782, 2790, 106 L.Ed.2d 26 (1989).

Likewise, in the bankruptcy context, a party will be entitled to a jury trial in contested matters or adversary proceedings when the above-described analysis indicates that the right to jury trial existed at eighteenth century common law and the claim embodies a "private" right. *Id.* at 40–49, 109 S.Ct. at 2789–94. In addition, though, the Court has held that creditors who present "claims" against the bankruptcy estate waive their Seventh Amendment right to a jury trial and submit themselves to the equitable jurisdiction of the bankruptcy court. *Id.* at 58, 109 S.Ct. at 2798.

Recently, in *Langenkamp v. Culp,* 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990), the Supreme Court reaffirmed the rationale in *Granfinanciera.* Specifically, the Court reasoned that "[i]n *Granfinanciera* we recognized that by filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power." *Id.* at 44, 111 S.Ct. at 331 (citing *Granfinanciera,* 492 U.S. at 58–59 & n. 14, 109 S.Ct. at 2798–99 & n. 14). The Court added:

If the creditor is met, in turn, with a preference action from the trustee, that action becomes part of the claims-allowance process which is triable only in equity. In other words, the creditor's claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-creditor relationship

---

749 (D.Minn.1988). By contrast, other courts have concluded that a setoff is a counterclaim under Federal Rule of Civil Procedure 13. *See Chapes, Ltd. v. Anderson (In re Scaife),* 825 F.2d 357, 362 (11th Cir.1987); *Middletown Plaza Assoc. v. Dora Dale of Middletown, Inc.,* 621 F.Supp. 1163 (D.Conn.1985); *Steinberg v. St. Paul Mercury Ins.,* 108 F.R.D. 355, 359 (S.D.Ga. 1985); *Zerodec Megacorp, Inc. v. Terstep of Texas, Inc. (In re Zerodec Megacorp, Inc.),* 60 B.R. 884, 886 (E.D.Pa.1985). Adding to the difficulties, courts have differed on the issue of whether a setoff constitutes a permissive, or compulsory, counterclaim. *Compare In re Scaife,* 825 F.2d at 362 (finding that setoff is a compulsory counterclaim) *with In re Zerodec Megacorp, Inc.,* 60 B.R. at 886 (reasoning that setoff is a permissive counterclaim).

7. The permissive nature of a setoff claim in bankruptcy is strengthened by Federal Rule of Bankruptcy Procedure 7013. Rule 7013 provides: "Rule 13 F.R.Civ.P. applies in adversary proceedings, *except that a party sued by a trustee or debtor in possession need not state as a counterclaim any claim that the party has against the debtor, the debtor's property, or the estate, unless the claim arose after the entry for relief.*" Fed.R.Bankr.P. 7013 (emphasis added). This language specifically relieves a party sued by the trustee in an adversary proceeding from the obligation to assert any compulsory counterclaims for prepetition claims. *In re Merritt Logan, Inc.,* 109 B.R. 140, 142–43 (Bankr.E.D.Pa. 1990).

through the bankruptcy court's *equity jurisdiction.*

*Id.* (emphasis in original) (citation omitted). Consequently, the Court concluded that creditors who filed claims against the estate waived their Seventh Amendment right to a jury trial. *Id.*

■ Unfortunately, the *Granfinanciera* and *Langenkamp* opinions failed to demarcate the scope of the term "claim" with respect to the waiver of a jury trial. Beyond inducing the claims allowance process, it is unclear what form of "claim" is sufficient to invoke the bankruptcy court's equitable powers and waive the right to a jury trial. For example, it is clear that creditors filing formal proofs of claim against the estate submit themselves to the bankruptcy court's equitable jurisdiction. *Langenkamp v. Hackler (In re Republic Trust & Savings Co.),* 924 F.2d 997, 998 (10th Cir.1991). However, other courts have broadly interpreted "claim" to include entities filing counterclaims in response to turnover actions filed by the trustee.[8] *Bayless v. Crabtree Through Adams,* 108 B.R. 299, 304–05 (W.D.Okl.1989).

In the case at hand, Jean Bob argues that its defense of setoff does not seek affirmative relief from the estate. Rather, according to Jean Bob, it simply endeavors to reduce the Trustee's claim against Jean Bob. As such, Jean Bob maintains it has not filed a "claim" for affirmative relief required to waive the Seventh Amendment right to a jury trial. In response, the Trustee contends that this court should view Jean Bob's affirmative defense as a counterclaim and, in doing so, follow those decisions that have found a counterclaim to constitute a "claim" under *Granfinanciera.*

■ The parties' efforts to characterize setoff merely as an affirmative defense, or counterclaim, are unwarranted. Instead, the appropriate inquiry should focus on the concept of a "claim" as described in *Granfinanciera* and *Langenkamp.* For instance, the Bankruptcy Code defines a "claim" in very broad terms. 11 U.S.C. § 101(5) (1988). A claim is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured...." *Id.* § 101(5)(A). Further, Congress intended to create a broadly inclusive definition of a "claim" that encompassed "all legal obligations of the debtor, no matter how remote or contingent." S.Rep. No. 95–989, 95th Cong., 2d Sess. 309 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6266. The Supreme Court has followed this broad definition stating that a " 'right to payment' [means] nothing more nor less than an enforceable obligation." *Johnson v. Home State Bank,* — U.S. —, —, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (citation omitted). In fact, in addressing the nature of a setoff in the context of section 101(5)(A), the Tenth Circuit concluded that the definition of a claim incorporates the right to setoff under section 553. *Citicorp Acceptance Co. v. Robison (In re Sweetwater),* 884 F.2d 1323, 1327 (10th Cir.1989). Accordingly, a setoff action is an enforceable obligation and, therefore, *may* constitute a claim against the bankruptcy estate for jurisdictional purposes.

Although setoff provides the basis for a claim under section 101(5)(A), the Tenth Circuit has also explained that "[s]etoff must be distinguished from a claim requesting a distribution from the liquidation of an estate." *In re G.S. Omni Corp.,* 835 F.2d at 1319. In *In re G.S. Omni,* the Internal Revenue Service (IRS) failed to file a proof of claim for amounts the Chapter 7 debtor owed in unpaid taxes. *Id.* at 1317. Subsequently, the Chapter 7 trustee commenced a turnover proceeding against the United States for tax refunds allegedly owed by the government to the debtor. *Id.* at 1318. In turn, the government sought to setoff amounts owed by the debtor to the IRS for unpaid taxes. *Id.* The *In re G.S. Omni* court reasoned:

---

8. Some decisions have further refined this principle by finding that compulsory counterclaims filed against the trustee do not waive a right to jury trial where it otherwise exists. *See Beard v. Braunstein,* 914 F.2d 434, 441–42 (3d Cir.1991).

There must be a fundamental distinction drawn between the provisions of the Code which deal with a proof of claim and its effect on the administration of the estate, and the *debt* which gives rise to a claim. While a creditor who wishes to participate in the distribution of an estate is required to file a proof of its claim, and while that participation can be denied by the disallowance of the claim, the underlying debt continues to exist. Indeed, were it not for the continuing existence of the debt (or "claim") there would be no need for a discharge of debts issued pursuant to 11 U.S.C. § 727(b).

*Id.* (emphasis in original). In *In re G.S. Omni,* the government "sought only to exercise its right to a setoff as a defense to the turnover action," rather than seeking an affirmative recovery against the estate in the form of a distribution. *Id.* at 1319. Because of this, the court concluded that the government was not required to file a proof of claim prior to asserting setoff as a defense under Bankruptcy Code section 553. *Id.* It is important to note, however, that the *In re G.S. Omni* court did not directly address the necessity of filing a proof of claim when setoff was raised as a counterclaim seeking affirmative relief.

Following reasoning similar to *In re G.S. Omni,* other courts have suggested that, if a setoff claim pursues an affirmative recovery from the estate, the party bringing the setoff action must file a proof of claim. *Stratton v. Equitable Bank, N.A.,* 104 B.R. 713, 735 (D.Md.1989), *aff'd,* 912 F.2d 464 (1990). Likewise, this court finds that the *In re G.S. Omni* court's reasoning implies that, when a creditor seeks an affirmative recovery from the estate through setoff, a proof of claim must be filed. Such a requirement follows because an affirmative recovery raised through setoff implicates the allowance and disallowance of claims against the estate. As *Granfinanciera* and *Langenkamp* instruct, the process of claims allowance invokes the equitable powers of the bankruptcy court's jurisdiction. By contrast, setoff raised as an affirmative defense[9] only reduces, or extinguishes, the amount sought by the trustee for the estate. *See, e.g., Gold Kist, Inc. v. Henderson (In re Henderson),* 24 B.R. 630, 632 (Bankr.M.D.Ga.1982) (reasoning that setoff raised as an affirmative defense could be used only to reduce the original claim). When raised as an affirmative defense, the bankruptcy court's equitable jurisdiction is not required because setoff as a *defense* does not involve the claims allowance process.

Consequently, this court concludes that an action for setoff raised as a counterclaim seeking affirmative relief necessarily submits the claimant to the equitable jurisdiction of the bankruptcy court, thereby waiving the Seventh Amendment right to a jury trial. By contrast, when setoff is raised only as an affirmative defense seeking to reduce, or extinguish, the original claim, the party asserting the claim does not invoke the bankruptcy court's equitable jurisdiction and retains the right to a jury trial. In the present case, because Jean Bob has raised setoff as an affirmative defense seeking only to reduce the amount claimed by the Trustee, Jean Bob has not invoked the bankruptcy court's jurisdiction and therefore retains its right to a jury trial.

## IV. Conclusion

In conclusion, this court need not await the bankruptcy court's determination of the nature of this adversary proceeding under 28 U.S.C. section 157(b)(3) if Jean Bob grounds its Motion to Withdraw the Reference on its Seventh Amendment right to a jury trial. Because Jean Bob contends it is entitled to a jury trial, the court may properly consider the merits of Jean Bob's Motion to Withdraw the Reference based upon that right. Furthermore, as the above-discussion indicates, by raising the

9. As a general rule, a "defense" is "that which is offered and alleged in an action or suit, as a reason in law or fact why the plaintiff should not recover or establish what he seeks." Black's Law Dictionary 377 (5th ed. 1979). It does not provide the basis for affirmative relief against the original claimant.

right to setoff as an affirmative defense, Jean Bob has not waived its right to a jury trial under the Seventh Amendment.

Accordingly, Jean Bob's Motion to Withdraw the reference is GRANTED.

IT IS SO ORDERED.